# ANTHONY L. RICCO
### ATTORNEY AT LAW

20 VESEY STREET • SUITE 400
NEW YORK, NEW YORK 10007
———
TEL (212) 791-3919
FAX (212) 964-2926
tonyricco@aol.com

STEVEN Z. LEGON
OF COUNSEL

September 16, 2019

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: ***United States v. Donville Inniss,*** Docket No. 18-Cr.-134 (KAM)

Dear Judge Matsumoto:

      Defense counsel respectfully submits this letter motion (1) objecting to that portion of the proposed testimony of government's expert witness, Thomas Durbin LLM, which relates to Section 7 of the Barbadian Prevention of Corruption Act of 1929, and (2) seeking for this court to strike Section 7 of the Barbadian Prevention of Corruption Act of 1929 from consideration by the jury in this case.

<u>Section of The Prevention of Corruption Act Which Must Be Stricken</u>

      Section 7 of the Barbadian Prevention of Corruption Act of 1929 states:

> Where, in any proceedings against a person for an offence under this Act, it is proved that any money, gift or other consideration has been paid or given to or received by a person in the employment of the Crown or any Government Department or a public body by or from a person or agent of a person holding or seeking to obtain a contract from the Crown or any Government Department or public body, the money, gift or

>consideration shall, for the purposes of this Act, be deemed to have been paid or given and received corruptly as inducement or reward, unless the contrary is proved.

The government's theory of its money laundering prosecution against Donville Inniss relies upon the application and validity of the Barbados Prevention of Corruption Act of 1929, a ninety year old colonial statute, enacted during the period of British colonial rule, which establishes a *mandatory* presumption that shifts the burden of proof to the defendant.[1] However, the *mandatory* burden shifting provision of Section 7 of the Barbadian Prevention of Corruption Act is a leftover vestige of British colonial rule that is not only inconsistent with modern United States Supreme Court authorities which permit only *permissive* presumptions, but is also a provision that was excluded from the comprehensive Barbados Prevention of Corruption Law of 2012, that was passed by both house of Parliament, but never enacted into law by proclamation.[2]

Doctrine of International Comity

This court has the authority to make findings on the applicability of a foreign laws or statutes when litigated in a United States court proceeding.

In *United States v. Thiam*, No. 17-2765 (2d Cir. 2019), the Second Circuit reiterated that the doctrine of international comity "is best understood as a guide where the issues to be resolved are entangled in international relations."[3] The Second Circuit then stated:

---

[1] The Prevention of Corruption Act, was first enacted on June 21, 1929, when Barbados was a colony during the reign of King George V.

[2] See Attachment "A"

[3] See, *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d Cir. 1998) (quoting *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996)).

> "Under the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." [4]

Additionally, in *Animal Science Products Inc. v. Hebei Welcome Pharmaceutical Co.* (No. 16-1220), the Supreme Court issued a recent decision relating to the doctrine of international comity, which holds that federal courts should accord "respectful consideration" to, but are not bound by, a foreign government's submission on the meaning and interpretation of its domestic laws.

Although this decision arose from a civil matter, the Supreme Court's decision is highly relevant here, as it addresses the doctrine of international comity and the interpretation of foreign law. In the unanimous decision written by Justice Ginsburg, the Court found that when determining foreign law under FRCP 44.1, "[a] federal court should accord respectful consideration to a foreign government's submission, but is not bound to accord conclusive effect to the foreign government's statements." (emphasis added).

Additionally, the Supreme Court reiterated Fed. R. Crim. P. 26.1's provision that in ascertaining foreign law, courts may consider "any relevant material or source" without regard to whether it is admissible under the Federal Rules of Evidence. Justice Ginsburg also laid out "relevant considerations" when analyzing a foreign government's characterization of its law, including: "the statement's clarity, thoroughness and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official

---

[4] See, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 742–43 (2d Cir. 2016)

offering the statement; and the statement's consistency with the foreign government's past positions." The Supreme Court did not undertake the comity analysis itself but remanded the case back to the Second Circuit Court of Appeals for renewed consideration consistent with its opinion.

Neither the Second Circuit's recent decision in *United States v. Thiam,* nor Supreme Court's recent decision in *Animal Science Products Inc. v. Hebei Welcome Pharmaceutical Co.,* require district courts to strictly adhere to foreign law. To the contrary, the Second Circuit's use of the language "ordinarily refuse to review acts of foreign governments," does not appear to foreclose a district court's power to review acts of foreign governments in all cases. Moreover, a district court's power to review foreign law is buttressed by the Supreme Court's recent holding that federal courts should accord "respectful consideration" to, but are not bound by, a foreign government's submission on the meaning and interpretation of its domestic laws.

Here, Donville Inniss requests that court strike Section 7 of the Prevention of Corruption Act of 1929 from jury consideration. The *mandatory* burden shifting presumption of Section 7 not only runs contrary to modern United States federal and state case authorities, but is also contrary to a more recently drafted version of the Act (that passed in both houses of the Barbadian Parliament in 2012, but was never enacted into law by Proclamation), which did not include a burden shifting presumption.

Presumptions in Criminal Cases in both Federal and State Courts

There are numerous statutes that establish presumptions favoring the prosecution in criminal cases. Consistent with the constitutional requirement that the prosecution not be relieved of its duty to prove the defendant's guilt beyond a reasonable doubt, statutory presumptions under both federal and New York state law are *permissive* - that is, the jury may,

but is not required to, find the fact presumed from the fact proved, and that they must be so told; and that no burden is shifted from the prosecution to the defense.[5] A conclusive or mandatory presumption in this case would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime," and would "invade [the] factfinding function." *Sandstrom v. Montana*, 442 U.S. 505, 523 (1979) See also, *In re Winship*, 397 U.S. 358 (1970); *Mullaney v Wilbur*, 421 U.S. 684 (1975); *People v. McKenzie*, 67 N.Y.2d 695, 696 (1986); *People v. Mertz*, 68 N.Y.2d 136, 148 (1986).

The Supreme Court has observed:

> A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney* v. *Wilbur,* 421 U. S. 684 (1975). In *Mullaney,* the charge was murder, which under Maine law required proof not only of intent but of malice. The trial court charged the jury that "'`malice aforethought is an essential and indispensable element of the crime of murder.'" *Id.,* at 686.

---

[5] The permissive nature of statutory presumptions against the accused was noted by the United States Supreme Court in County Court v. Allen, 442 U.S. 140, 157 (1979), which upheld the a permissive presumption that all occupants of a vehicle possess knowledge of a weapon found therein.

5

> However, it also instructed that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Ibid.* As we recounted just two Terms ago in Patterson v. *New York,* "[t]his Court . . . unanimously agreed with the Court of Appeals that Wilbur's due process rights had been invaded by the presumption casting upon him the burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation." 432 U.S., at 214. And *Patterson* reaffirmed that "a State must prove every ingredient of an offense beyond a reasonable doubt, and . . . may not shift the burden of proof to the defendant" by means of such a presumption. *Id.,* at 215.

*Sandstrom v. Montana*, 442 U.S. at 524.

Because the jury may very well interpret the instruction as constituting either a burden-shifting presumption like that in *Mullaney,* or a conclusive presumption like those in *Morissette* v. *United States,* 342 U. S. 246 (1952) and *United States* v. *United States Gypsum Co.,* 438 U. S. 422 (1978), and because either interpretation would deprive Donville Inniss of his right to the due process of law, we request that the court preclude any testimony about section 7, and preclude any testimony on that section by the government's expert. See, *Sandstrom v. Montana*, 442 U.S. at 524.

Our research into Barbadian law has revealed a virtual absence of any prosecution under this 90 year old colonial statute, certainly none since Barbados obtained its freedom

from colonialism in 1966. In fact, over the past 10 years, the Barbadian Parliament has heavily debated new anti-corruption legislation, and has actually passed a new and comprehensive anti-corruption statute. These modern statute has eliminated the burden shifting presumption in its entirety. In view of the fact that while inferences are permitted in the United States federal and state court, they are permissive, not mandatory, defense counsel is of the view that, as applied to this case, that the court should strike Section 7 of the Barbadian Prevention of Corruption Act of 1929 from jury consideration and preclude any expert testimony regarding Section 7 of the statute.

This remedial measure in no way prejudices the government's case, because the jury is still informed that bribery is not permitted under Barbados law; and the method by which a defendant would defend himself in Barbados under a 1929 colonial statute is not relevant for the jury to consider in this case. As a result of the foregoing, we object to the government's expert witness testifying about Section 7 of the Barbadian Prevention of Corruption Act of 1929, and we request that this provision of the statute be stricken for the purposes of this case and not presented to the jury.

Respectfully,

*Anthony L. Ricco*
Anthony L. Ricco

cc: A.U.S.A. Sylvia Shweder (By E.C.F.)

cc: Gerald M. Moody, Jr. (By E.C.F.)
    Trial Attorney
    U.S. Department of Justice

# ATTACHMENT "A"

## BARBADOS PREVENTION OF CORRUPTION ACT (2012)

**(Sections 33 & 34)**

29

**33.** (1) A person who, without lawful authority, promises, offers or gives any advantage to a public official as an inducement or reward for himself or another person or entity in order that the public official

*(a)* abstain from performing or perform any act in his official capacity;

*(b)* assist, hinder or delay any other person in the transaction of any business with a public body; or

*(c)* hinder, expedite or prevent the performance of any act whether by himself or through another public official,

is guilty of an offence and is liable on conviction on indictment to a fine of $500 000 or to imprisonment for a term of 5 years or to both.

(2) A public official who, without lawful authority, accepts or solicits any advantage for himself or another person or entity as an inducement or reward in order to

*(a)* abstain from performing or perform any act in his capacity as a public official;

*(b)* assist, hinder or delay any other person in the transaction of any business with a public body;

*(c)* communicate to another person any classified or confidential information obtained in the performance of his functions; or

*(d)* hinder, expedite or prevent the performance of an act whether by himself or through another public official,

is guilty of an offence and is liable on conviction on indictment to a fine of $500 000 or to imprisonment for a term of 5 years or to both.

*Bribery of a public official.*

30

Bribery with regard to contracts.

**34.** (1) Any person who, without lawful authority, offers an advantage to a public official as an inducement or reward for giving assistance or for using his real or apparent influence in relation to any matter referred to in subsection (2) is guilty of an offence and is liable on conviction on indictment to a fine of $500 000 or to imprisonment for a term of 5 years or to both.

(2) The matters referred to in subsection (1) are

*(a)* the payment of the price or other consideration in respect of any contract or sub-contract as referred to in paragraph *(b)*;

*(b)* the procurement, promotion or execution of any contract or sub-contract with a public body for

(i) the performance of any work;

(ii) the provision of any service;

(iii) the supply of any article, material or substances; or

(iv) the doing of any other thing;

(3) A public official who, without lawful authority, accepts or solicits any advantage as an inducement or reward for giving assistance or using his real or apparent influence concerning

*(a)* the payment of the price or other consideration; or

*(b)* the procuring, promotion or execution,

of any contract or sub-contract as is referred to in subsection (2) is guilty of an offence and is liable on conviction on indictment to a fine of $500 000 or to imprisonment for a term of 5 years or to both.