**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**Case No.: 1:18-CR-00134-KAM-1**


**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**

**DONVILLE INNISS,**

    **Defendant.**

_____/

## DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Defendant, **DONVILLE INNISS** ("**Inniss**"), by and through undersigned counsel, hereby files this Reply to the Government's Response to Inniss' Sentencing Memorandum and asks this Court to impose a below-guidelines, probationary sentence and extensive community service, and in support thereof states as follows:

### I.    A WITHIN-GUIDELINES SENTENCE IS UNREASONABLE

As a preliminary matter, Inniss realleges and incorporates by reference to his Sentencing Memorandum (D.E. 125 at 4–8) the contention that his total offense level should be twenty-four (24), not twenty-eight (28), because the offense did not involve more than one bribe and the offense conduct was not sophisticated. A total offense level of twenty-four (24) and criminal history category of I results in an advisory sentencing guideline range of fifty-one (51) to sixty-three (63) months imprisonment. By contrast, the Government and Probation argue the advisory guideline range should be seventy-eight (78) to ninety-seven (97) months' imprisonment. Regardless of whether this Court accepts Inniss' or the Government's formulation, both sets of advisory guidelines

substantially overstate the seriousness of the offense and would result in a disproportionate and unduly lengthy sentence for a first-time, non-violent offender.

Pursuant to 18 U.S.C. §3553(a)(2)(A), a Sentencing Court *shall* consider "the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." Under 18 U.S.C. §3553(a)(6), Courts must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Data collected from money laundering cases across the country and within the Eastern District of New York provides ample justification for this Court to vary downward from the clearly unreasonable guideline range and impose a probationary sentence. United States v. Cavera, 550 F.3d 180, 189 (2d. Cir. 2008) (noting that a District Court may not presume that a sentence within the guidelines range is reasonable).

A.      NATIONAL AVERAGE LENGTH OF MONEY LAUNDERING SENTENCES

From October 1, 2019 through September 30, 2020, the United States Sentencing Commission compiled sentencing data for 63,556 cases from every federal jurisdiction. See "Preliminary 2020 Datafile, USSCFY20," United States Sentencing Commission (January 2021).[1] In 15,483 of those cases, defendants received a downward variance from the advisory guidelines range. Id. at 27. Of those 15,483 defendants that received downward variances, 310 of them were convicted of money laundering. Id. The average sentence for those 310 defendants was fifty (50) months, with an average downward variance of thirty-eight (38) months below the bottom of the advisory guideline range. Id.

---

[1] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_4th_FY20.pdf

The advisory guideline range of seventy-eight (78) to ninety-seven (97) months' imprisonment advanced by the Government and Probation is significantly higher than the national average (fifty (50) months) for those that received downward variances and overstates the seriousness of the offense at issue here. Thus, the Court should vary downward significantly to account for the need to prevent unwarranted disparities in sentencing of similarly situated defendants and the need for the sentence to reflect the seriousness of the offense. See United States v. Hemmingson, 157 F.3d 347 (5th Cir. 1998) (holding that a downward departure was proper where one illegal $20,000 campaign contribution was not within heartland of money laundering cases involving long-running, elaborate schemes).

B.    **TYPICAL MONEY LAUNDERING SENTENCES IN THE EASTERN DISTRICT OF NEW YORK**

An analysis of the average sentence length imposed on defendants convicted of money laundering in the Eastern District of New York further evidences the unreasonableness of the advisory guideline range in this case. The Sentencing Commission's "Interactive Data Analyzer" revealed that, between 2015 and 2020, there were one-hundred and sixty (160) reported cases of money laundering in this District where defendants had a criminal history category of I. See "Interactive Data Analyzer," United States Sentencing Commission (April 2021) (results reproduced below). The average sentence length for those defendants was twenty-three (23) months, with the median sentence being six (6) months. Id. It is important to note that these figures include sentencing information for all money laundering cases, not only those in which a downward variance was granted. Id.



Average and Median Sentence Length
Fiscal Year 2015,2016,2017,2018,2019,2020

■ Sentence Length (Average Months)   ■ Sentence Length (Median Months)

23

6

0   4   8   12   16   20   24
Months

The figure includes the 160 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively. Sentences of probation only are included here as zero months. The information in this figure includes conditions of confinement as described in USSG §5C1.1.
FILTER:
Fiscal Year: 2015,2016,2017,2018,2019,2020; Circuit: All; State: All; District: New York, Eastern; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: Money Laundering; Guideline: All; Sentencing Zone: All; Criminal History: I

[2]

The seventy-eight (78) to ninety-seven (97) month advisory guideline range the Government and Probation are advocating for **is more than three-times the average sentence imposed on defendants in this District**. Both the national and local sentencing statistics illustrate the absurdity of the advisory guidelines and demonstrate how they can easily be manipulated to grossly overstate the seriousness of an offense, such as here. Consequently, the Court should place greater emphasis on the mitigating factors in support of a below-guidelines sentence set forth in Inniss' Sentencing Memorandum (D.E. 125). See United States v. Adelson, 441 F.Supp.2d 506, 515 (S.D.N.Y 2006), aff'd 301 Fed. Appx. 93 (2d Cir. 2008) ("[W]here the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just, and reasonable. But where, as here, the calculations under the guidelines have run so amok that they are patently absurd on their face, a Court is forced to place greater reliance on

---

[2] Available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard

the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and the human being who will bear the consequences.").

## C. REPRESENTATIVE CASES WARRANTING A PROBATIONARY SENTENCE

"[D]istrict judges have an obligation to consider whether to depart from the Guidelines sentencing range or to impose a non-Guidelines sentence in every case." See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring). Below is a collection of sentences imposed on defendants convicted of far more serious money laundering offenses in this District:

1) United States v. Jonathan Flom; E.D.N.Y. Docket No. 14-CR-507-RRM:

   a) Offense Conduct:

   > Defendant, an attorney, accepted $141,300 into his bank account from investors he believed to be victims of a securities fraud scheme. Knowingly laundered an additional $756,168 in a separate securities fraud scheme.

   b) Sentence: forty-eight (48) months

2) United States v. Michael Dodd, Kenneth Landgaard, James Robert Shipman Jr.; E.D.N.Y. Docket No. 15-CR-00552-ERK:

   a) Offense Conduct:

   > Defendants conspired to launder $2.2 million of fraudulently obtained proceeds from a securities scheme.

   b) Sentence (Dodd): thirty-three (33) months

   c) Sentence (Landgaard): twenty-seven (27) months

   d) Sentence (Shipman): twenty-four (24) months

3) <u>United States v. Christian Duque-Aristizabal, Jhon Hincapie-Ramirez, Henry Poveda, Karen Nieves-Arenales</u>; E.D.N.Y. Docket No. 15-CR-00081-CBA:

   a) Offense Conduct:

      Defendants were leaders of the "Guangzhou Enterprise," an international money laundering organization responsible for laundering over $5 billion of narcotics proceeds for cartels based in Mexico and Colombia.

   b) Sentence (Duque-Aristizabal): twenty-one (21) months

   c) Sentence (Hincapie-Ramirez): thirty-three (33) months

   d) Sentence (Poveda): thirty-three (33) months

   e) Sentence (Nieves-Arenales): time served

4) <u>United States v. Anatoly Kraiter</u>; E.D.N.Y. Docket No. 10-CR-00771-NG

   a) Offense Conduct:

      Laundered $226,870 for a Medicare fraud scheme with $77 million in intended losses.

   b) Sentence: thirty-seven (37) months

5) <u>United States v. Costas Takkas</u>; E.D.N.Y. Docket No. 15-CR-00252-PKC

   a) Offense Conduct:

      Laundered $3 million bribe related to award of sports marketing contracts for FIFA World Cup qualifying matches.

   b) Sentence: fifteen (15) months

These cases all involved significantly higher amounts of money than are at issue here, and yet each defendant received a sentence substantially less than the advisory guideline range Inniss now faces. As such, a probationary sentence coupled with extensive community service would be sufficient – but not greater than necessary – to satisfy the factors outlined in 18 U.S.C. § 3553(a). See <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007); <u>see also</u> <u>United States v. E.L</u>, 188

F.Supp.3d 152, 156 (E.D.N.Y. 2016) (stating that in sentencing a defendant, a "judge's sense of proportionality must be applied").

## II.     DETERRENCE DOES NOT NECESSITATE INCARCERATION

Although the Government listed several reasons in support of a lengthy sentence, such as the fact that Inniss was a public official and that his case has been covered in the media, its argument for a within-guidelines sentence is, in reality, predicated on one thing: the need to deter criminal conduct. Yet, when fashioning a sentence under 18 U.S.C. §3553(a), a Court's "'unjustified reliance upon any one factor' suggests unreasonableness." United States v. Pope, 554 F.3d 240, 246 (2d Cir. 2009) (internal citation omitted); see also United States v. Gardellini, 545 F.3d 1089 (D.C. Cir. 2008) (finding the Government's argument that a defendant's sentence was substantively unreasonable "based on deterrence alone is flawed because it elevates one §3553(a) factor—deterrence—above all others."). Moreover, "the bare assertion of the need to deter, unconnected to the background and characteristics of a defendant or the nature and circumstances of a crime, provides only superficial support for a sentence of imprisonment." See Corsey, 723 F.3d at 381 (Underhill, J., concurring); see also 18 U.S.C. § 3553(a)(1) (requiring that "the personal characteristics of a defendant are to be considered equally with the nature and circumstances of the offense").

The Government has not stated particularized reasons for why Inniss needs to be deterred from committing future crimes based on his personal characteristics. Thus, the Government would have this Court give Inniss a lengthy sentence solely to "send a message." See Adelson, 441 F. Supp. 2d. at 514 (stating there is "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders"). Indeed, it is difficult to understand why Inniss would need to be deterred from committing future crimes – his political

career is already over, and except for the isolated conduct at issue here, Inniss has lived a law-abiding life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) (approving a variance from guidelines of 78-97 months to 20 months because the defendant's "conviction made it 'doubtful that the defendant could pursue' his career as an academic or translator," and therefore the need for further deterrence and protection of the public "is lessened because the conviction itself 'already visits substantial punishment on the defendant'"). Furthermore, any insinuation that Inniss will commit future crimes because of his conviction here is pure speculation.

Additionally, the Government argues that Inniss' failure to "take any responsibility for his actions" is an aggravating factor that supports "a substantial term of imprisonment." See Government Sentencing Memorandum at 10 (D.E. 129). Not only is this suggestion extremely inappropriate, but it is also a violation of Inniss' due process rights. See United States v. Whitten, 610 F.3d 168 (2d. Cir. 2010) (vacating death sentence where Government used defendant's refusal to accept responsibility as reason to sentence him to death.). The Federal Sentencing Guidelines treat acceptance of responsibility as a basis for leniency (see U.S.S.G. §3E1.1), "but do not provide a harsher sentence for failure to plead." Whitten, 610 F.3d at 195. Inniss maintains his innocence and fully intends to appeal his conviction. Thus, it is wrong for the Government to propose that the Court should consider Inniss' failure to accept responsibility as a factor that warrants a substantial prison term. For this Court to accept the Government's invitation to do so would be to impose a tax on Inniss for exercising his constitutional right to a jury trial.

### III.   CONCLUSION

Considering the substantial mitigating factors—the guidelines overstating the seriousness of the offense, Inniss' personal characteristics and history, his long and meritorious community service, his age and health, and Inniss' low likelihood to reoffend, as well as the national and local

sentencing data—the Court should impose a probationary sentence, although it is below the presumptively unreasonable advisory guideline range. See E.L., 188 F.Supp.3d at 168 ("in view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, their families, society and our economy, frugality in incarceration is prized.").

Respectfully submitted,

**GRAYROBINSON, P.A.**
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
joel.hirschhorn@gray-robinson.com

By:     s/Joel Hirschhorn
        JOEL HIRSCHHORN
        Florida Bar #104573
        Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 14, 2021 I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

all counsel of record.

s/Joel Hirschhorn
JOEL HIRSCHHORN
