1          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA,        : 18-CR-00134(KAM)
4                                       :
                                       :
5                                       :
        -against-               : United States Courthouse
6                               : Brooklyn, New York
                                       :
7                                       :
                                : Thursday, August 23, 2018
8   DONVILLE INNISS,            : 12:00 p.m.
                                       :
9          Defendant.           :
                                       :
10
- - - - - - - - - - - - - - X
11

12

13  TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT/STATUS CONFERENCE
          BEFORE THE HONORABLE KIYO A. MATSUMOTO
14              UNITED STATES DISTRICT JUDGE

15

16

17                  A P P E A R A N C E S :

18  For the Government:   RICHARD P. DONOGHUE, ESQ.
                          United States Attorney
19                          Eastern District of New York
                            271 Cadman Plaza East
20                          Brooklyn, New York 11201
                     BY:   SYLVIA SHWEDER, ESQ.
21                          Assistant United States Attorney

22
                     UNITED STATES DEPARTMENT OF JUSTICE
23                     1400 New York Avenue, NW
                       Washington, DC 20005
24                   BY:GERALD MOODY, JR., ESQ.

25

1

2              A P P E A R A N C E S:  (Continued)

3

4   For the Defendant:    LAW OFFICES OF GARNETT H. SULLIVAN
                           1080 Grand Avenue
5                          Suite 200
                           South Hempstead, New York 11550
6                         BY:GARNETT H. SULLIVAN, ESQ.

7

8

9

10
    Court Reporter:  Stacy A. Mace, RMR, CRR
11                    Official Court Reporter
                      E-mail:  SMaceRPR@gmail.com
12
    Proceedings recorded by computerized stenography.  Transcript
13  produced by Computer-aided Transcription.

14

15

16

17

18                            ooo0ooo

19

20

21

22

23

24

25

1          (In open court.)

2          (Judge KIYO A. MATSUMOTO takes the bench.)

3          THE COURTROOM DEPUTY:  This is criminal cause for

4    arraignment, 18-CR-134, USA versus Donville Inniss.

5          Will the Government's attorneys state your

6    appearances, please.

7          MS. SHWEDER:  Sylvia Shweder for the United States.

8    Good afternoon, Your Honor.

9          And with me is Gerald Moody, Junior, from the United

10   States Department of Justice, and he is here also appearing on

11   this case.

12         THE COURT:  All right, thank you.  Good afternoon.

13         And for the defense?

14         MR. SULLIVAN:  For the defendant, Garnett Sullivan,

15   1080 Grand Avenue, South Hempstead, New York, appearing for

16   Mr. Inniss.

17         Good afternoon, Judge.

18         THE COURT:  Good afternoon.

19         Mr. Inniss, do you speak and understand English

20   without difficulty?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right, you may have a seat if you

23   are more comfortable, sir.

24         Mr. Inniss, the purpose of this proceeding is to

25   advise you that a grand jury in the Eastern District of

1   New York has returned an Indictment and a Superseding

2   Indictment charging you with felony violations of federal law,

3   United States federal law.

4           You have a right to counsel and if at any time you

5   wish to consult with your counsel, you certainly may do so.

6           At this time I would like to advise you that, first

7   of all, the grand jury returned an Indictment in or about

8   March of this year charging you with conspiracy to launder

9   money between August 2015 and April 2016, and two counts of

10  money laundering on August 17th, 2015 and April 18th, 2016.

11          In addition, the original underlying Indictment

12  seeks criminal forfeiture as to Counts 1 through 3 seeking to

13  forfeit any proceeds that were either involved with the

14  charged offenses or are proceeds of the charged offenses.

15          Now, the underlying Indictment charges that you in

16  your capacity as a Minister of Industry in a country of

17  Barbados participated in a scheme to receive bribes and that

18  you laundered those proceeds in the United States.

19          Now, I do not know whether you received a copy of

20  the original Indictment, sir.  Did you?

21          MR. SULLIVAN:  We have, Judge.

22          THE COURT:  And did you review those charges with

23  your attorney, sir?

24          THE DEFENDANT:  Yes.  Yes, Your Honor.

25          THE COURT:  Do you understand the charges, sir --

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  -- in the original Indictment?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  I will ask you now, although it may not

5    be necessary, but I would just like to make sure that I cover

6    all the bases, do you wish to enter a plea of guilty or not

7    guilty to the Indictment, sir?

8           THE DEFENDANT:  Not guilty, ma'am.

9           THE COURT:  All right, sir.  Now, I will also then

10   proceed to arraign you on the Superseding Indictment.

11          The Superseding Indictment, I believe, was issued

12   recently.  Do we have a date for that?

13          MS. SHWEDER:  It was issued yesterday, Your Honor.

14          THE COURT:  All right.

15          So again, sir, the grand jury, a grand jury in the

16   Eastern District returned a Superseding Indictment, which

17   charges you, again, with fraudulent schemes resulting in

18   proceeds that were laundered in the United States.

19          Count One charges you with conspiracy to launder

20   money between August 2015 and April 2016; and Counts 2 and 3

21   charge you with money laundering; Count Two on August 17th,

22   2015 in which a wire transfer in the amount of $16,536.73 was

23   transferred from a Bermuda company account in Bermuda to a

24   bank in New York in the name of New York Dental Company.

25          Now, in addition, Count Three charges that on

1  April 18th, 2016 a wire transfer in the amount of $20,000 was

2  transferred from a Bermuda company account in Bermuda to a

3  bank account in Elmont, New York, that is within the Eastern

4  District, in the name of the New York Dental Company through a

5  branch located in Brooklyn.  In addition, the Superseding

6  Indictment similarly asks or seeks a criminal forfeiture of

7  all proceeds or instrumentalities of the offenses charged in

8  Counts One through Three.  And they seek a monetary judgment

9  against you if those proceeds cannot be located.

10          Sir, do you understand what I have advised you about

11  the Superseding Indictment?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Would you like me to read the

14  Superseding Indictment to you or do you waive reading?

15          THE DEFENDANT:  No, I waive that, Your Honor.

16          THE COURT:  Have you had an opportunity to ask your

17  counsel and consult with your counsel about the charges set

18  forth in the Superseding Indictment?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And do you wish to enter a plea of

21  guilty or not guilty to the Superseding Indictment?

22          THE DEFENDANT:  Not guilty, Your Honor.

23          THE COURT:  Sir, we will enter pleas of not guilty

24  on the charges in the Superseding Indictment.

25          Now, has Mr. Inniss also been before the Court on a

1  bail hearing?

2          MS. SHWEDER:  My understanding is that he did while

3  he was in the Middle District of Florida before he was removed

4  up here.

5          THE COURT:  All right.

6          Does the Government have any objection to

7  Mr. Inniss's bail conditions?

8          MS. SHWEDER:  The only thing is that the Government

9  would request that an additional bail condition be added that

10 he not be permitted to communicate with his co-conspirators.

11 And also, the defense would like to request that his bail

12 conditions be expanded to the Southern District of Florida.

13 The Government has no objection to the bail conditions being

14 expanded to the Southern District of Florida.

15         And I believe, but I will let the defense attorney

16 say, whether he had no objection to the defendant not being

17 permitted to communicate with his co-conspirators.

18         MR. SULLIVAN:  One of the problems with that, Judge,

19 is it depends on who the co-conspirators are because they are

20 not necessarily identified.

21         MS. SHWEDER:  The people that --

22         MR. SULLIVAN:  Some might be family members, I'm not

23 sure.

24         MS. SHWEDER:  Oh, the people that are not named in

25 the Superseding Indictment and Indictment, but that are

1   described in the Superseding Indictment.

2           MR. SULLIVAN:  And does that include the --

3           MS. SHWEDER:  It does not include family members.

4           MR. SULLIVAN:  No, I was going to refer to the

5   proprietor of the dental company.  Is he specifically --

6           MS. SHWEDER:  Yes, it would also include that

7   person.

8           THE COURT:  You mean the prohibition against

9   communication would include the dental company person?

10          MS. SHWEDER:  Yes, Your Honor.

11          THE COURT:  Do you have any objection?

12          MR. SULLIVAN:  With respect to the dental company in

13  particular, this was a close friend of Mr. Inniss and is a

14  close friend.  I mean they had a friendship extending probably

15  all their life.  It seems somewhat unreasonable that a

16  condition is that they now -- their friendship has now expired

17  as a result.

18          THE COURT:  Well, to the extent that the dental

19  company, its activities and use are described in the

20  Superseding Indictment, it does seem to me to be a reasonable

21  request to order that Mr. Inniss, as a condition of his

22  release, not communicate with the principal of that entity and

23  that he not have indirect communications through

24  intermediaries or family members, that he not have

25  communications orally, in writing, directly or indirectly or

1  by any means, with co-conspirators or the proprietor of the

2  dental company.

3          MR. SULLIVAN:  Your Honor, would that condition

4  preclude me as his attorney?

5          THE COURT:  Well, I don't know whether the

6  Government has a view with regard to co-conspirators who may

7  have a joint defense agreement.

8          MS. SHWEDER:  I think that if there is a joint

9  defense agreement I don't think that we are able to prohibit

10 that.

11         THE COURT:  Well, usually if there is a joint

12 defense agreement among the named defendants in the

13 Superseding Indictment, usually attorneys have to be present.

14 I mean otherwise with their clients, if there are going to be

15 discussions, otherwise unsupervised discussions among

16 co-conspirators is generally not permitted.

17         MR. SULLIVAN:  So can I just -- I just want to be

18 clear.  Does that preclude me from communicating with him,

19 even if not about the case?

20         The reason I'm asking is this is someone that I

21 actually know.

22         MS. SHWEDER:  Oh, no.  I mean if it's not about the

23 case --

24         MR. SULLIVAN:  I just don't want --

25         MS. SHWEDER:  If it's not about the case, I don't

1   see why Mr. Garnett wouldn't be permitted to speak with him.

2            THE COURT:  No, I mean I don't have any issue with

3   that.

4            MR. SULLIVAN:  Okay.

5            THE COURT:  If you see him socially and want to

6   exchange pleasantries, as long as you do not talk to this

7   individual about the case, that should be permitted.

8            MR. SULLIVAN:  Okay, fine.

9            THE COURT:  Do we have a copy of the bond that was

10  signed in the Middle District of Florida?  You do, okay.

11           So the Government has requested two additional

12  conditions.

13           Has the passport been surrendered?

14           THE DEFENDANT:  Yes.

15           MR. SULLIVAN:  Yes, Judge, that was done in the

16  Middle District of Florida.

17           THE COURT:  All right.  So does he carry only a

18  passport from Barbados?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Okay.  And the bond has been executed,

21  sir?  Has the bond been --

22           MR. SULLIVAN:  I believe yes, Judge, it was.

23           THE COURT:  All right.  So what I am going to

24  suggest we do -- were there suretors on this bond?

25           Were there other suretors on this bond?

1          MR. SULLIVAN:  Yes, there was his wife, Judge.  I

2   believe she was the only suretor.

3          THE COURT:  Would she be willing to accept these

4   additional conditions?

5          MR. SULLIVAN:  Yes, Judge.

6          THE COURT:  All right.  I am thinking maybe the best

7   thing to do would be to either have a new bond signed or I add

8   these additional conditions that were set by the judge in the

9   Middle District of Florida.

10         How would the Government and defense counsel like to

11  proceed?

12         MR. SULLIVAN:  I would suggest since his wife is not

13  here, she is in Tampa, I would suggest that you just amend the

14  conditions that were set.

15         THE COURT:  I mean that is fine to just amend them.

16  There is a document.

17         Has the Government seen this document with the

18  conditions of release signed by the Magistrate Judge in the

19  Middle District of Florida?

20         MS. SHWEDER:  I don't think I've seen it, but I

21  think that my colleague, Mr. Moody, has seen it.

22         Your Honor, may I raise something else at this time

23  that we just noticed in reading this report?

24         THE COURT:  Yes.

25         MS. SHWEDER:  My understanding is, and Your Honor

1    has the bail conditions in front of her, but the bail

2    conditions were secured also by a property in Florida.  And

3    upon reading this report now, we understand that that property

4    is being sold.

5              THE DEFENDANT:  No, Your Honor.

6              MS. SHWEDER:  If that's not true, then I think it

7    might be --

8              MR. SULLIVAN:  It's their only home.

9              THE DEFENDANT:  It was a property --

10             MS. SHWEDER:  Oh, in Barbados.

11             MR. SULLIVAN:  Correct.

12             MS. SHWEDER:  Oh, I'm sorry.  Okay, I'm sorry,

13   misunderstood, Your Honor.

14             THE COURT:  Well, what I am going to do is I will

15   approve and incorporate this order from the Middle District of

16   Florida into the conditions in this case, and I will add the

17   two other conditions proposed by the Government and agreed to

18   by Mr. Inniss.

19             So let me do that, and I will have the parties sign

20   it.

21             MR. SULLIVAN:  Judge, may I -- I notice, I just

22   received the report from the Pretrial -- the Pretrial Services

23   report.

24             THE COURT:  Yes.

25             MR. SULLIVAN:  And I notice that it indicates that

1   we respectfully recommend that the Court remove the location

2   monitoring condition and place the defendant in third-party

3   custodianship of his wife and that no contact with the

4   co-conspirators.  I would ask if the Court would consider that

5   provision.

6              MS. SHWEDER:  The Government would oppose removing

7   the electronic monitoring.  The defendant is -- does have a

8   citizenship with another country and is only a legal permanent

9   resident of the United States and by permitting him to remain

10  on house arrest, I think that's been pretty generous by the

11  Government already.

12             If there are certain conditions that, you know,

13  certain things that he needs to do, of course we would be

14  amenable to hearing if there are certain reasons that he needs

15  to be out during certain periods of time or something like

16  that, but we would request that the electronic monitoring

17  remain intact.

18             (Pause.)

19             MS. SHWEDER:  Oh, he is not on house arrest.

20             THE COURT:  State your name for the record, sir.

21             PTSO ALARIA:  Officer Michael Alaria of Pretrial

22  Services.

23             THE COURT:  Thank you.

24             PTSO ALARIA:  Good afternoon.

25             THE COURT:  Good afternoon.

1      PTSO ALARIA:  Your Honor, I apologize for the late

2  notice here.  Just to update the Court, the Southern District

3  of Florida released him on what we would call an open GPS.  So

4  he really is on a bracelet, but he has no restrictions as far

5  as his movements.  So we would respectfully request that he

6  have some kind of curfew as directed by Pretrial Services.

7      THE COURT:  Who is going to supervise him, the

8  Middle District?

9      PTSO ALARIA:  Sorry, I believe it's the Middle

10  District of Florida, sorry.

11      THE COURT:  All right.  I am just trying to find the

12  whole reference to the GPS monitoring.

13      MR. SULLIVAN:  It is on page --

14      THE COURT:  Where is the recommendation that you

15  were referring to, sir?

16      MR. SULLIVAN:  It's on the second page of the

17  Pretrial Services report, Your Honor, page 2, at the bottom of

18  page 2 where it says "recommendation."

19      THE COURT:  All right, thank you.

20      (Pause.)

21      THE COURT:  So is it the view then of Pretrial

22  Services in the Middle District and in this district that

23  Mr. Inniss not have GPS?

24      PTSO ALARIA:  We didn't think it was appropriate,

25  Your Honor.

1          THE COURT:  Because?

2          PTSO ALARIA:  I think, perhaps, in this case one

3     thought process might have been that because he had to travel

4     to this district to face the charges there might have been

5     some concern about him not getting here as he should have,

6     which would have been the reason to place that condition on

7     him.

8          It was our understanding from the officer who has

9     been supervising him in Florida that they did not think it was

10    necessary to have that condition in place.

11         THE COURT:  Well, they also state in their Pretrial

12    Services report that he does present a risk of flight given

13    that he has a lack of employment ties in this community and he

14    is a citizen of Barbados.  He no longer possesses a Barbados

15    passport, but they do note that he has engaged in foreign

16    travel.  And they also ask that his travel be restricted to

17    the Middle District of Florida and the Eastern District of

18    New York.

19         And we are expanding that to the Southern District

20    of Florida, correct?

21         MS. SHWEDER:  Yes, Your Honor.

22         THE COURT:  All right.  But I am not seeing a

23    reason, given that he's got citizenship in another country and

24    was --

25         PTSO ALARIA:  Your Honor, that's fine.

1      THE COURT:  -- and a minister in another country,

2   that we should not be concerned about contacts in other

3   countries and a possibility that he could leave our

4   jurisdiction, the jurisdiction of the Court.

5      PTSO ALARIA:  Yes, Your Honor.

6      THE COURT:  So I would continue GPS.  He could

7   arrange with his Pretrial Services officer for time out for

8   employment opportunities.  I don't even know if he is allowed

9   to work here.  Is he allowed to work here?

10     MR. SULLIVAN:  He is, Judge.  He's a permanent

11  resident of this country and he has a home in Tampa.

12     THE COURT:  All right, but he has no employment

13  here?

14     MR. SULLIVAN:  No, because he was living in Barbados

15  and he came here -- obviously, he's going to be looking for

16  employment at this stage --

17     THE COURT:  All right.

18     MR. SULLIVAN:  -- because he's going to be here.

19     THE COURT:  So he can always arrange time out with

20  his Pretrial Services officer for worship, for employment

21  opportunities, for travel to the Eastern District to appear in

22  court or other advanced noticed reasons that he could give to

23  his officer down there.

24     PTSO ALARIA:  So is he then being placed on home

25  detention or -- there are levels of being on house arrest.

1  There could be home incarceration, which would be your most

2  restricted; and then home detention, which would allow for

3  more activity, such as the ones you explained; or there is

4  something called a curfew, which would be the least

5  restrictive form which would allow the officer to lay out set

6  hours each day where he is free to move within his travel

7  restricted area.

8          MR. SULLIVAN:  Judge, if I may, and I know this is

9  the Court's authority and the Court's right, certainly, but I

10 think all the U.S. Attorney was asking for, the only

11 additional condition they were seeking beyond the conditions

12 that were placed by the Middle District of Florida was no

13 contacts with co-conspirators.  I think that was the only

14 additional condition.

15         So what I would ask is that the Court continue the

16 condition that was made by the Middle District and, of course,

17 the no contact with co-conspirators.  And then to expand the

18 travel restrictions -- sorry, the travel location to include

19 the Southern District of Florida, which the People has agreed

20 to.

21         So the only change to the conditions would be that

22 he could now travel within the Southern District of Florida.

23 And secondly, that there be no contacts with co-conspirators.

24         Because I read the Pretrial report, and I know my

25 client had asked me about it, and it mentioned that they

1  didn't think the monitor was necessary, I decided to ask the

2  Court about that, but I wouldn't like to see enhanced

3  limitations.

4          THE COURT:  All right, so these will be additional

5  conditions, G and H.  G will be travel will be permitted to

6  the Southern District of Florida, in addition to the Middle

7  District of Florida and the Eastern District of New York.

8          PTSO ALARIA:  Your Honor, we have a blank bond here

9  from our district.  I don't know if that's necessary, if you

10  wanted to --

11          THE COURT:  Well, I was just going to add additional

12  language to the bond.

13          PTSO ALARIA:  That's fine.

14          THE COURT:  Rather than try to take everything in

15  the Middle District bond and put it in the Eastern District

16  bond --

17          PTSO ALARIA:  Fair enough.

18          THE COURT:  -- I think it will be easier for me to

19  so order the Middle District bond and add these additional

20  conditions.

21          (Pause.)

22          THE COURT:  What I would like to do is have

23  Mr. Inniss and the Government and Mr. Inniss's counsel initial

24  and date the additional conditions.  So let me hand that up to

25  the parties.

1        Yes, ma'am.

2        MS. SHWEDER:  And then, Your Honor, if it would be

3  appropriate that we rely on Mr. Garnett Sullivan to relate

4  that to the wife who is the suretor on the bond.

5        MR. SULLIVAN:  Yes.  Yes, we will certainly do it.

6        THE COURT:  Counsel, if she has any objection, you

7  need to notify me right away.

8        MR. SULLIVAN:  Most certainly I will, Judge.

9        THE COURT:  All right.  Maybe just have him sign it

10  actually, it might be better.

11        MR. SULLIVAN:  Sign it, okay.

12        THE COURT:  Just sign and date.

13        (Pause.)

14        MS. SHWEDER:  So just for clarity for the Pretrial

15  Services officer here in EDNY, we understand that he's still

16  on open GPS.  So he has no curfew or anything like that, it's

17  just that he's on electronic monitoring, but it's --

18        THE COURT:  Yes.

19        PTSO ALARIA:  And just to clarify, obviously, if the

20  defendant fails to comply, the officer also has the authority

21  to restrict that.  So it is as directed, that could go either

22  way.

23        THE COURT:  No, I think the idea was to make sure

24  that the Pretrial Services officer has the ability to know

25  where Mr. Inniss is.

1        MS. SHWEDER:  That is amenable to the Government,

2  Your Honor.

3        THE COURT:  Okay, so I am going to so order this.

4        I note for the record that Mr. Inniss, his lawyer,

5  Mr. Sullivan, and the Assistant U.S. Attorney has executed the

6  additional conditions.  I will so order this and you may have

7  copies of this.

8        And, Mr. Inniss, as I said, if Mrs. Inniss has any

9  objections to these additional conditions, she should notify

10 us by next week.  Let's say, by next Tuesday if we do not hear

11 from her we will assume that she accepts these conditions.

12 But I am going to give you a copy and what I will ask you to

13 do is just ask you to have her sign this same bond and you can

14 send a copy back to the Court, to this Court --

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  -- with her signature and we will make

17 it part of the record.

18       MR. SULLIVAN:  Would I file that on ECF, Judge?

19       THE COURT:  Yes.  Actually, yes, your attorney can

20 do that.  Thank you.  She will have to find a place on this

21 very crowded page to sign.

22       MS. SHWEDER:  And then to continue, Your Honor, if

23 Your Honor is ready.

24       THE COURT:  Yes, we probably need to have a status

25 date for the next co-conspirator appearance.

1    MS. SHWEDER:  Correct, Your Honor, and we have one

2    other ministerial kind of matter to address as well.

3         THE COURT:  Sure.

4         MS. SHWEDER:  We have started to turn over discovery

5    as of today, which I will file the discovery letter on ECF

6    after this appearance, but to Mr. Garnett Sullivan, regarding

7    the matter.  We have so far, I don't believe included anything

8    that has included PII, personally identifying information, as

9    is the practice of our office.  Further discovery that we

10   disclose, it just might not be possible to be able to redact

11   all the PII because they will include bank statements and

12   things like that.  So we have given Mr. Garnett Sullivan a

13   copy of our standard PII stipulation regarding additional

14   discovery and ask that the parties all sign that and that the

15   Court, if it is amenable to Mr. Sullivan and the defendant,

16   that the Court so order it.

17        So --

18        MR. SULLIVAN:  We had discussed it, I just haven't

19   had an opportunity to discuss it with my client.  I could do

20   that.

21        THE COURT:  Do you want to do it now or do you want

22   to give them time to review it?

23        MR. SULLIVAN:  I have reviewed it, Judge, and I did

24   discuss it with him, but I didn't actually go through it.

25        THE COURT:  All right, we can take five minutes, if

1    you want.

2              MR. SULLIVAN:  All right.  Thank you, Judge.

3              MS. SHWEDER:  Thank you.

4              (Pause.)

5              THE COURTROOM DEPUTY:  October 23rd for the next

6    status?

7              MS. SHWEDER:  That's fine for the Government.

8              THE COURTROOM DEPUTY:  Would that work for the

9    defense?

10             MR. SULLIVAN:  That's fine, yes.

11             THE COURTROOM DEPUTY:  At 12 noon.

12             MS. SHWEDER:  And, Your Honor, the parties have been

13   engaged already in some plea negotiations and the Government

14   does believe that there is a good possibility that this could

15   be resolved short of trial.  So the Government does ask that

16   the time be excluded between now and October 23rd.

17             THE COURT:  All right, let me just advise the

18   defendant of his rights under the Speedy Trial Act.

19             Mr. Inniss.

20             THE DEFENDANT:  Yes.

21             THE COURT:  Sir, under the Speedy Trial Act, which

22   is a federal law, you have the right to be brought to trial

23   within 70 days of the date of your arraignment.  In other

24   words, starting today in the next 70 days you have the right

25   to be brought to trial.  If the Government does not bring you

1    to trial within the 70 days, you can ask me to dismiss the

2    charges against you.

3            The Government has represented that you and your

4    attorney and the Government have been engaging in preliminary

5    plea negotiations.  In addition, the Government will be

6    turning over discovery to your lawyer so that you may review

7    that with him and think about your options, which include a

8    trial or a plea or motions that may, in part, affect this

9    case.

10           The Government and, I believe, you may be interested

11   in asking me to exclude time from your speedy trial rights,

12   which would have the effect of putting the speedy trial clock

13   in a stopped position.  So that 70-day period will not be

14   running in order to give you and your attorney time to review

15   the discovery and to engage in discussions amongst yourselves

16   and with the Government as to whether or not you want to

17   dispose of the case short of a trial.

18           Do you understand what I have told you so far, sir?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  All right, let me ask counsel to review

21   the application to exclude time with you so that you may

22   decide whether or not you wish to join the application.

23           (Pause.)

24           MR. SULLIVAN:  Judge, I have discussed that with him

25   previously and he is agreeing to the waiver.

1          THE COURT:  I beg your pardon?

2          MR. SULLIVAN:  I have discussed the speedy trial

3    waiver and the speedy trial rights with him and he has

4    executed the waiver.

5          THE COURT:  All right, thank you.

6          I note for the record that Mr. Inniss has, his

7    counsel has indicated that he understands his rights under the

8    Speedy Trial Act and he does join in the application to

9    exclude time.  I find that the interest of justice will allow

10   me to grant the application to exclude time between today,

11   August 23rd, and the next date, which will be October

12   the 23rd.  I will see you both, both the defense and the

13   Government, in court at that time.

14         Ms. Jackson, what time was it?

15         THE COURTROOM DEPUTY:  12 noon.

16         THE COURT:  12 noon.

17         In addition, I have signed the Stipulation and Order

18   regarding the use, retention and protection of discovery

19   materials containing the personal identifiable information and

20   other private information.  We will make copies for the

21   parties, and please maintain and be aware of the conditions.

22         Is there anything else I need to address today?

23         MR. SULLIVAN:  No, Your Honor, not from the defense.

24         THE COURT:  All right, do you have a copy of the

25   additional conditions of release, Mr. Inniss?

 1          MR. SULLIVAN:  Pardon me, Judge?

 2          THE COURT:  The additional conditions of release

 3  that we just executed today, do you have a copy?

 4          THE DEFENDANT:  Yes.  Yes, Your Honor.

 5          THE COURT:  All right, so you will send me back a

 6  version of this --

 7          THE DEFENDANT:  Signed by my wife.

 8          THE COURT:  -- signed by your wife, and I will give

 9  you a copy of the application and order to exclude time from

10  your speedy trial rights.

11          All right, is there anything else?

12          MS. SHWEDER:  Nothing from the Government.

13          THE COURT:  All right, thanks.  We will just get you

14  a copy of the application.

15          MS. SHWEDER:  Thank you, Your Honor.

16

17          (Matter adjourned.)

18                  *     *     *     *     *

19

20  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

21

22     /s/ Stacy A. Mace                    September 3, 2018
    _____     _____
23      STACY A. MACE                       DATE

24

25