1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA,     :    18-CR-134(KAM)
4
              Plaintiff,      :
5                                  United States Courthouse
       -against-              :    Brooklyn, New York
6
DONVILLE INNISS,              :
7                                  January 15, 2020
              Defendant.      :    9:00 o'clock a.m.
8
   - - - - - - - - - - - - - X
9
                   TRANSCRIPT OF TRIAL
10        BEFORE THE HONORABLE KIYO A. MATSUMOTO
          UNITED STATES DISTRICT JUDGE, and a jury.
11
APPEARANCES:
12
For the Government:          RICHARD P. DONOGHUE
13                           United States Attorney
                             BY: SYLVIA SHWEDER
14                               DAVID N. GOPSTEIN
                             Assistant United States Attorneys
15                           271 Cadman Plaza East
                             Brooklyn, New York
16
                             U.S. DEPARTMENT OF JUSTICE
17                           1400 New York Avenue, NW
                             Washington, D.C.  20005
18
                             BY:  GERALD MOODY, ESQ.
19
20 For the Defendant:        ANTHONY L. RICCO, ESQ.

21                           STEVEN Z. LEGON, ESQ.

22
Court Reporter:              Charleane M. Heading
23                           225 Cadman Plaza East
                             Brooklyn, New York
24                           (718) 613-2643
Proceedings recorded by mechanical stenography, transcript
25 produced by computer-aided transcription.

1          (In open court; outside the presence of the jury.)

2          THE COURT:  We're ready to start the charging

3     conference.

4          Did everybody get a chance to look at the proposed

5     charges?

6          MS. SHWEDER:  Yes, Your Honor.

7          MR. RICCO:  Yes.

8          THE COURT:  So what we will do is maybe go through

9     each one and if you have a suggested edit or amendment, let me

10    know if there are disagreements and we'll get them resolved

11    today.

12         I just want to note for the record that all counsel

13    are here.

14         MR. RICCO:  Yes.

15         THE COURT:  So all counsel and Mr. Inniss is here.

16         Should we start with the verdict sheet?

17         MS. SHWEDER:  Yes.

18         THE COURT:  Does anyone have any suggestions for the

19    verdict sheet?

20         MR. RICCO:  The verdict sheet is fine, Your Honor.

21         MR. MOODY:  Nothing from the government.

22         THE COURT:  What I would suggest is go through each

23    one.  As you know, the beginning part of these instructions is

24    the standard instructions.

25         Does anyone have any suggested edits for part one,

1    Introduction, and part two, General Rules?

2           MR. MOODY:  Just on the introduction, one minor

3    thing.

4           THE COURT:  Sure.

5           MR. RICCO:  What page are you on?

6           MR. MOODY:  On page one of Introduction, the first

7    page of the introduction.  The paragraph that begins,

8    "Second."

9           It says, "I will instruct you as to the two crimes."

10   I would just recommend, we would recommend either removing it

11   or saying the particular crimes since there are three counts.

12   It could be confusing to the jury.

13          THE COURT:  We'll just say "the crimes," perhaps.

14          Thank you.  Anything else?

15          MR. MOODY:  Nothing from the government, Your Honor.

16          MR. RICCO:  Nothing from us.

17          THE COURT:  Anything else in General Rules?  Some of

18   these seem repetitive, I think, but in trying to explain to

19   them prior inconsistent statements and general inconsistencies

20   between testimony and other evidence or other witnesses, it

21   sounds a little repetitive.

22          MR. MOODY:  Your Honor, we have a couple of others.

23          In number 10 which is on page 13, "Dual intent no

24   defense."

25          MR. RICCO:  Okay.

1    MR. MOODY:  This is a grammar issue.  We would

2  just -- it says, "During the trial, the defendant may

3  contend."  We just suggest saying "the defendant contended."

4         THE COURT:  Under where?

5         MR. MOODY:  This is under number 10, "Dual intent no

6  defense," on page 13.  The first sentence on the following

7  page, at the top of page 14, "During this trial, the defendant

8  contended."

9         THE COURT:  Okay.  Thank you.

10        MR. RICCO:  Wait a second.  I don't necessarily

11 agree with that.  I'm sorry.  Where are you reading from?

12        MR. MOODY:  So this is "Dual intent no defense."

13 This is on the bottom of page 13, top of page 14.

14        MR. RICCO:  Okay.  I know where you are.

15        I'm sorry, Judge.

16        THE COURT:  Do you agree with that change or not?

17        MR. RICCO:  I think that the argument -- I think it

18 should say "may contend" because we don't have the contention.

19 We just were answering questions.

20        MR. MOODY:  I think some of the questions during the

21 trial about, you know, ICBL being a good insurance company

22 that is A rated, that sort of thing, can go to this, and so

23 given that --

24        MR. RICCO:  That's why I think the language should

25 be "may" because we're not necessarily arguing that, you know,

1   that there's a separate -- I'm very conscious of the Judge's

2   ruling with respect to what we're allowed to argue and, you

3   know, I think the language, Your Honor, should be, it should

4   be "may contend" unless, of course, we argue something

5   differently.

6           THE COURT:  I mean, as you know, we always do this

7   before the case is completely finished and now I think it is

8   so we took some of the instructions out that didn't need to be

9   there, but I think he, the closing arguments haven't been made

10  yet.

11          MR. MOODY:  Right.

12          THE COURT:  We could put it in the future tense like

13  this.

14          MR. MOODY:  I think that by the time you read this,

15  the case would be over, so it was really just a grammatical

16  issue.

17          MR. RICCO:  But I think it's more.  I mean, I looked

18  at this instruction also as to whether or not it was -- I'm

19  sorry, Your Honor -- that it was a reflection, was it really a

20  reflection of what we were going to be arguing, and I really

21  want to make sure that the argument that we present, you know,

22  stays within Judge Matsumoto's rulings with respect to what we

23  can say and not say.  And so I was a little uncertain about

24  this and certainly, that instruction, I understand why it's

25  there, because we haven't formulated it afterwards.  At the

1  end of the day, we very well may argue something along those

2  lines but we're not there, Judge.

3          THE COURT:  What particular ruling do you feel is

4  inhibiting you from making certain arguments?

5          MR. RICCO:  I don't feel any, you know, nothing

6  that's inhibiting us from making arguments, but I just want to

7  make sure that our arguments are in compliance with the

8  Court's rulings on the motions in limine.  So, you know, I'm

9  very conscious of that and want to make sure that we're

10  arguing from the facts consistent with the rulings of the

11  Court.

12          With respect to this idea that some of his actions

13  and actions of others were motivated, in whole or in part, by

14  considerations that were not unlawful, I would like the

15  language to say "may."  I mean, if we argue otherwise, and

16  I'll call you, I'll give you the heads up before the end of

17  the day, then we just switch "may" to the language that was

18  suggested.

19          THE COURT:  What if we say "may have contended,"

20  does that allow for both possibilities?

21          MR. RICCO:  Yes.

22          MR. MOODY:  Yes.

23          MS. SHWEDER:  Yes.

24          THE COURT:  Okay.  "May have contended."

25          Is there anything else?

1          MR. RICCO:  And, Judge, just for the record, I

2   didn't mean to suggest --

3          THE COURT:  No, no, I just want to make sure.

4          MR. RICCO:  Right.

5          THE COURT:  Because I thought most of the motions in

6   limine were not contentious.

7          MR. RICCO:  They were not.

8          THE COURT:  There seemed to be general agreement.

9          MR. RICCO:  And they generally helped us focus, you

10  know, what we want to do at trial, and I just want to be

11  consistent with that.

12         MR. MOODY:  We think that makes sense, Your Honor.

13         THE COURT:  All right.

14         MR. MOODY:  The next one we had was on page 19,

15  coming off of number 15, "Credibility of witnesses."  There's

16  a paragraph at the bottom, "You should also take into

17  account" --

18         MR. RICCO:  Are you saying number 15 or page 19?

19         MR. MOODY:  Page number.

20         MR. RICCO:  Okay.

21         MR. MOODY:  I'm saying it's part of the "Credibility

22  of witnesses" instruction.

23         MR. RICCO:  Yes.

24         MR. MOODY:  It says, "You should also take into

25  account any evidence that the witness who testified may

1  benefit in some way from the outcome."  And then there's a

2  sentence that says, "Such an interest in the outcome creates a

3  motive to testify falsely and may sway the witness to testify

4  in a way that advances his or her own interests."

5        The U.S. Attorney's appeals group has informed

6  everybody that we should request to remove that sentence.

7  This sentence has had issues in other cases and it's most

8  important in cases where the defendant testifies because this

9  sentence in other cases has caused defense counsel to argue

10  that it sort of infringes on the presumption of innocence.

11  Obviously, that didn't happen here, but I think the advice is

12  to, in all cases, ask that it be removed.  So we're just

13  making that request on advice from the appeals group.

14        THE COURT:  I mean, I would say in 99 percent of the

15  cases, the defendants don't testify and it goes to both

16  defense witnesses who may testify and government witnesses who

17  may testify.

18        Is there any Circuit case or any criticism of this

19  instruction?  I mean, I'm just trying to understand how

20  this -- I understand what you're saying about the presumption

21  of innocence --

22        MR. MOODY:  Right.

23        THE COURT:  -- if a defendant does testify, but I

24  still think that if a defendant does testify, the jury would

25  still have to consider that witness as it would any other

1  witness' motives and assess credibility.

2          MR. MOODY:  Yes, I think that, you know, the cases

3  where this has come up have been, as far as I'm aware and,

4  again, this is from the appeals group, are cases in which the

5  defendant has testified.  Obviously, that didn't happen here,

6  but we checked and we were still advised to make the request.

7  Obviously, if you disagree, that's fine, but we're just sort

8  of doing what has been asked.

9          THE COURT:  And this is a standard sentence in most

10 instructions throughout the United States because you're from

11 DOJ.

12         MR. MOODY:  Right.  Right.  And again --

13         THE COURT:  You're a messenger.

14         MR. MOODY:  -- I was told to do this and I can give

15 you the names of the cases where this is an issue but those

16 cases are not exactly on point because the defendant

17 testified.

18         It came up in United States v. Gains which is a

19 Second Circuit case in 2006 and I think it's currently in a

20 case before the Court of Appeals right now in a case called

21 U.S. v. Solano.

22         THE COURT:  What Circuit, please?

23         MR. MOODY:  That's apparently a case coming out of

24 this district, it's in the Second Circuit.

25         Again, I want to be clear, I am not intimately

1    familiar with those cases and I believe them to be cases that

2    are factually distinct but I'm, just as you said, I'm the

3    messenger on this.

4              THE COURT:  Well, Mr. Ricco, what is your response?

5    Do you want it in or out?

6              MR. RICCO:  I'd like it in, Your Honor.  If the

7    defendant had testified, I would join in that application, for

8    the reasons stated.  I mean, if it's an issue where the

9    defendants are testifying, then, you know, why repeat that

10   error, but this is not that case and, therefore, those

11   concerns are not applicable.

12             THE COURT:  I mean, I think the language in the next

13   paragraph seems to soften or at least say that this is not to

14   suggest that every witness with an interest would testify

15   falsely.  I don't think it implicates the interest that, you

16   know, you've talked about with regard to a defendant's right

17   to testify.

18             MR. MOODY:  That's right.  I understand, Your Honor.

19   I think we still make the request but understand your

20   reasoning and respect it.

21             THE COURT:  Okay.

22             Now, the bracketed paragraph on page 20.

23             MR. MOODY:  Yes.

24             THE COURT:  I think these are just will this happen,

25   should we put it in or just leave it out.

1    MR. MOODY:  I think that some of the questioning of

2  Kamante Millar, I think, we would request to leave it in, has

3  suggested that there's discrepancies.  We don't think there

4  were, but I think just to be on the safe side.

5         MR. RICCO:  And we join with the government on that.

6         THE COURT:  All right.  So we will leave it in.

7         Okay.  Anything else?

8         MR. MOODY:  Just continuing on, on page 23,

9  instruction 19, "Prior inconsistent statements," looking at

10  this instruction, I think it's not applicable here.  I don't

11  think that any witness was impeached with extrinsic evidence

12  of a prior inconsistent statement.  I don't think any evidence

13  of prior inconsistent statements came in so we think that this

14  instruction is unnecessary and shouldn't be --

15         THE COURT:  What about Kamante Millar?

16         MR. MOODY:  She was impeached in question --

17         THE COURT:  About her prior statement to the FBI?

18         MR. MOODY:  -- but that statement did not, you know,

19  come into evidence extrinsically meaning it wasn't a prior

20  inconsistent statement of hers that was sort of entered into

21  evidence.  It was just questioning by defense counsel.  It's a

22  slight technicality.

23         MR. RICCO:  Well, Judge, my view of that is a little

24  different.  I think we really in this case only have one

25  question that would fit into this, that was Ms. Millar, and

1   she was confronted with the statement.  There was -- it didn't

2   refresh her recollection and then she was confronted with the

3   statement and she denied it and had an explanation.

4           So ultimately -- and this is just really just a

5   question.  I mean, ultimately, isn't it really a question for

6   the jury to decide whether or not she was being truthful about

7   her testimony in relationship to the inconsistency?

8           MR. MOODY:  So I think if it were a true prior

9   inconsistent statement that were coming into evidence, you

10  would have needed to have called a witness to say she said

11  this or she would have had to have some writing or other thing

12  that you would have entered into evidence that actually was

13  evidence of a prior inconsistent statement.

14          What you were doing was using an attorney proffer

15  summary that was written by the FBI and she denied it.  I

16  think it's different, that's a different thing.  That's

17  definitely impeachment, but I don't think any evidence came

18  into the case that it was a prior inconsistent statement.  She

19  said it was -- she said that her statements were consistent

20  and I think that's the only evidence in the case.  Defense

21  counsel's questions are not evidence.

22          MR. RICCO:  That's for sure.  That's a true

23  statement, but we're not talking about my question.  The case

24  agent was questioned about this and she had an answer for that

25  also.  The case agent was asked about this very specific

1  issue.  She said she wasn't present for that statement and

2  then with respect to the attorney proffer which was, you know,

3  what the agent ultimately talked about, she had an explanation

4  for that.

5          THE COURT:  I mean, I think that the point is that

6  the jury heard the prior statement that may be arguably

7  inconsistent with her trial testimony.  So I think it would be

8  helpful for the jury just to understand what that was about.

9  I know it's technically, you say, but they did hear the prior

10 statement.

11         MR. MOODY:  It's just the notion that they have

12 heard evidence that some witnesses made statements.  I don't

13 think that -- I just don't want the jury to think that there

14 actually is evidence of a prior inconsistent statement in the

15 record.

16         MR. RICCO:  But I think that that's a very accurate

17 sentence though.  They've heard someone made statements in an

18 earlier case that counsel has argued are inconsistent with

19 this.  It's our position --

20         THE COURT:  Is your problem with the word

21 "evidence"?  Should we say, "You have heard that some

22 witnesses made statements"?  Does that make you feel better?

23         MR. MOODY:  I think we would need to make changes

24 throughout because the next sentence says -- well, actually

25 that might work, Your Honor.  Well, if it said something like,

1   "You have heard defense counsel argue that some witnesses made

2   statements on an earlier occasion that were inconsistent,"

3   that certainly happened.

4            MR. RICCO:  I'm okay with that.

5            THE COURT:  So --

6            MR. RICCO:  Because that's all it is.  It's just an

7   argument.

8            MR. MOODY:  Right.

9            THE COURT:  The only change I would make is strike

10  the word "evidence."  And then in the second sentence, "What

11  counsel argues are arguably prior inconsistent statements," I

12  guess it would be "were placed before you," right?

13           So we'll take out "evidence of" at the beginning of

14  the second sentence.  I think that would address the problem,

15  wouldn't it?

16           MR. MOODY:  I'm just reading it to make sure but I

17  think, Your Honor, that would help and we appreciate that.

18           THE COURT:  Anything else?

19           MR. MOODY:  On page 27, there is a -- so in number

20  24, "Uncalled witnesses equally available," there's a line

21  there, "if applicable, and the attorney has referred to their

22  absence from the trial."

23           To my memory, I don't think that has happened but I

24  don't know what's going to happen in closing so I just ask

25  that if that does happen in closing, that we include it.  If

1   it doesn't happen in closing, we don't include it.

2           THE COURT:  This is the challenge, folks.  This is

3   70 pages.

4           MR. MOODY:  Right.

5           THE COURT:  And we also -- I mean, usually I try to

6   tease out a little bit of information because it's almost,

7   well, it's difficult to have you do your summations, have us

8   run upstairs, make the edits, run off 70 pages for one copy,

9   much less sets for all of you.  So I'd like to get it resolved

10  now if we can, please.

11          MR. MOODY:  I understand, Your Honor.  We're not

12  trying to be --

13          THE COURT:  I know you're not.  I'm not accusing

14  anybody.

15          MR. RICCO:  What was the language that you're

16  talking about?

17          THE COURT:  The bracket on page 27.

18          MR. RICCO:  Oh, I see.  Okay.

19          THE COURT:  We don't really need it, do we?

20          MR. RICCO:  You know, judge, we really don't need

21  it.  I mean, I'm not -- my argument to the jury is not, oh,

22  you heard Mrs. So-and-so, how come they didn't call

23  Mrs. So-and-so, but the defense argument will be more along

24  the lines that the jury has to make its decision from the

25  evidence or the lack of evidence and, you know, I'm fine with

1  no speculation, et cetera, et cetera.

2          THE COURT:  So should we just then end the sentence

3  after the word "testify"?

4          MR. RICCO:  I'm fine with that.

5          THE COURT:  And leave the rest out?

6          MR. MOODY:  Yes, Your Honor.  That's fine.

7          MR. RICCO:  Because I think the rest of the

8  instruction picks it up if someone does.

9          MR. MOODY:  On page 28, 26 and 27, think that 26 is

10  applicable.

11          MR. RICCO:  I'm sorry?

12          MR. MOODY:  This is on page 28, instruction 26,

13  "Charts and summaries:  Admitted as evidence," I think there

14  were two charts that were admitted.

15          THE COURT:  Right.

16          MR. MOODY:  But I think the number 27 is not

17  applicable.  I don't think there were any charts and summaries

18  that were not admitted.

19          THE COURT:  Right.

20          MR. RICCO:  I agree.

21          THE COURT:  So, 27 is out.

22          MR. MOODY:  On page 30, I think our request would be

23  a copy of the indictment does go back, however, I think there

24  are obviously two defendants that are also listed on the

25  second superseding indictment.

1          THE COURT:  The government would have to sanitize

2     it.

3          MR. MOODY:  Yes.  We were going to recommend as a

4     possible procedure, we can take the names off the caption

5     obviously, just put their names and take out the references to

6     defendant, and we would also request that we change some of

7     the anonymized names, "New York Dental Company," call it

8     Crystal Dental Lab which it was, "Bank 1," call it Bank of

9     America, just so that the jury is not confused about what's

10    being referred to.

11         We'd be happen to do that today and send it to

12    defense counsel if that's a procedure that works for the Court

13    and defense counsel.

14         MR. RICCO:  Judge, I'd like to think about that a

15    little further.

16         THE COURT:  Whether the indictment goes or not?

17         MR. RICCO:  Yes.  This is going to take a lot of

18    redacting.

19         THE COURT:  Well, could the government just work on

20    it?

21         MR. RICCO:  Yes, I'm open.

22         THE COURT:  Give it to Mr. Ricco and he can decide

23    so we can finalize these.

24         MR. MOODY:  Yes, yes, Your Honor.

25         So on page 38 of the charge and under "Money

1  laundering conspiracy," this is a technical edit.  We filed

2  these jury instructions prior to superseding, so the quotation

3  of the indictment just needs a small alteration to be

4  consistent with the current second superseding indictment.

5           THE COURT:  Oh, okay.

6           MR. MOODY:  And it's literally, it says in the big

7  quoted paragraph at the end, third line up, "paragraphs 19

8  through 21," that should be changed to paragraphs 19 through

9  20.

10          THE COURT:  Okay.

11          MR. MOODY:  And another very minor thing, at the top

12  of the page --

13          THE COURT:  Page 38?

14          MR. MOODY:  Page 38.  It's the end of the sentence.

15  It says, "Crime of money laundering charged in Counts Two and

16  three," I think "Three" should be capitalized.

17          THE COURT:  Capitalized, yes.

18          MR. MOODY:  Very minor.

19          On page 40, again, this is from the quoted language

20  in the indictment.  There's two things.

21          One, it's a little hard to -- it's in the big block

22  quote.  It's the sentence, well, the part of the sentence that

23  reads "to promote the carrying on or."  That should be "of."

24  I think that was a typo.  It was correct in the indictment but

25  I think it's a typo there.

1          THE COURT:  Just hang on.

2          :  Okay.  "To promote the carrying on of one or

3   more"?

4          MR. MOODY:  That's correct.

5          THE COURT:  Okay.  Thank you.

6          MR. MOODY:  And same edit at the bottom there,

7   "paragraphs 19 through 20," instead of 21.

8          Then on the same page, we would ask that the names

9   in the box there be changed to what they are.  So, "Bermuda

10  company," we would ask that be changed to "BF&M Limited."  And

11  "Bank 1" changed to "Bank of America" and "New York Dental

12  Company" changed to "Crystal Dental Lab Limited."

13         MR. RICCO:  We have no objection to that, Judge.  It

14  would be consistent with the evidence.

15         THE COURT:  "Crystal Dental Lab," did you say

16  "Limited"?

17         MR. MOODY:  "Ltd."

18         THE COURT:  Okay.

19         MR. MOODY:  And then in the same box, at the very

20  end, that comma should be removed.

21         THE COURT:  After "New York"?

22         MR. MOODY:  Yes, the comma and everything that

23  follows, "through a branch location of Bank 1 in Brooklyn, New

24  York."  In the second indictment, we took that language out,

25  we took it out of the indictment.

1       THE COURT:  So the sentence will end in that first

2  box after the word "Limited," and we take out "through a

3  branch located"?

4       MR. MOODY:  That's correct.

5       And then in the next box below, pretty much the same

6  exact edit.  So "Bermuda Company" would be "BF&M Limited."

7  "Bank 1" would be "Bank of America."  "New York Dental

8  Company" would be "Crystal Dental Lab Limited," and then

9  "through a branch location" would be crossed out through the

10 end there.

11      On page 52, there was a question on this charge,

12 "Uncharged acts considered for a limited purpose."

13      THE COURT:  Yes.

14      MR. MOODY:  We did not introduce any such evidence

15 so I think we agree it should be deleted.

16      THE COURT:  Everybody spilled a lot of ink on that

17 one in the motions in limine.  We thought, all right, did we

18 miss something.

19      MR. MOODY:  Sometimes you change your strategy at

20 the last minute.

21      THE COURT:  So 11 comes out.

22      MR. MOODY:  Yes, Your Honor.

23      THE COURT:  We thought we would take it out but we

24 thought let's just ask to make sure.

25      MR. MOODY:  I think from the government, that's

1  everything, Your Honor.

2          THE COURT:  Mr. Ricco.

3          MR. RICCO:  Yes.

4          Steve?

5          MR. LEGON:  Your Honor, we noticed that there's

6  reference to, and there's about eight of them, foreign

7  government, foreign official, bribery of a foreign official in

8  violation of Barbadian law.

9          THE COURT:  Okay.  Where are you, sir?

10          MR. LEGON:  We can go to page 39, the first line.

11  To be consistent with the law, it should say "public official"

12  not "foreign official" because it's the bribery of a public

13  official in violation of Barbadian law.

14          THE COURT:  Okay.  Would it be all right to say

15  "Barbadian public official" just to distinguish it from a U.S.

16  public official?

17          MR. LEGON:  I think so, yes.

18          MR. RICCO:  Either way, sure.

19          THE COURT:  "Barbadian"?

20          MR. RICCO:  Because when the Court reads the section

21  of the Barbadian statute, it says "public official."

22          THE COURT:  Right.  Yes, you're right.

23          So where else did you see that, Mr. Legon?

24          MR. LEGON:  There are a number of instances.  Page

25  39, the first line.

1        THE COURT:  Yes.

2        MR. LEGON:  Page 39, the middle of the page under

3   the underlined heading "Third."

4        THE COURT:  Yes.  Okay.  "Barbadian public official"

5   under "Third."  Yes, got it.

6        MR. LEGON:  Then page 39, towards the bottom of the

7   page, six lines up from the bottom.

8        THE COURT:  Yes, I see it.  Thank you.

9        MR. LEGON:  Page 41.

10       THE COURT:  We can search for it too.

11       MR. LEGON:  Page 41, three lines up from the bottom,

12   under the underlined heading "Second."

13       Page 42, the last line of the page, page 43, the

14   four line of the page and page 43, second paragraph, five

15   line.  That's it.

16       MR. MOODY:  Your Honor, just to make sure I

17   understand, it's going to say, instead of "foreign official,"

18   it's going to say "Barbadian public official" to make clear

19   it's not a U.S. public official?

20       THE COURT:  Yes, that's correct.

21       MR. MOODY:  The government is fine with that change.

22       THE COURT:  We'll also word search it to make sure

23   we didn't miss anything.

24       MR. LEGON:  Sure.

25       THE COURT:  We did have a discussion with a man from

1   Barbados just generally one day and he said that you could

2   also say "Barbasian," but "Barbadian" might be more formal.

3            THE DEFENDANT:  It is.  If I may, "Barbadian" is the

4   official term.  "Barbasian" is colloquial.

5            THE COURT:  Okay.

6            MR. RICCO:  We had the same discussion, Your Honor.

7   We wanted to make sure we were saying it correctly.

8            THE DEFENDANT:  Just don't say "barbarian."

9            THE COURT:  We will not say that.

10           THE DEFENDANT:  Sorry, Your Honor.

11           MR. RICCO:  It's a "Basian" habit, Judge.  Forgive

12  him.

13           THE COURT:  All right.  Was there anything else?

14           MR. RICCO:  No, Your Honor.  We're okay with the

15  substance of the charge and picked up a couple of those

16  mistakes the government did, missed most of them, but we're

17  okay.

18           THE COURT:  Page 44, under number 7, the fifth line

19  down, specifically, "Bribery of an," again, "Barbadian public

20  official," yes?

21           MR. MOODY:  Yes.

22           MR. RICCO:  Yes.

23           MR. MOODY:  That's fine, Your Honor.

24           THE COURT:  And then it also appears in the second

25  to the last line on that page.

1          MR. RICCO:  Yes.

2          THE COURT:  Footnote 1, we're all in agreement that

3    we are going to leave out the language regarding misdemeanors?

4          MR. RICCO:  Yes, I'm okay with that, Judge.

5          MS. SHWEDER:  I'm sorry, Your Honor?

6          THE COURT:  Just Footnote 1, the omission, we're not

7    going to use "misdemeanor" because it's too confusing.

8          MR. MOODY:  Yes, we agree with that.

9          THE COURT:  This interesting reference to "the

10   Crown," is Barbados a Commonwealth country?

11         MR. RICCO:  It was.

12         MR. MOODY:  I believe it still is, actually.

13   According to our expert, it's still within --

14         THE DEFENDANT:  Yes, a British Commonwealth.

15         MR. MOODY:  -- the realm of Her Majesty's

16   Commonwealth technically.

17         MR. RICCO:  And we've been told that they're still

18   stuck there.

19         MR. MOODY:  Just like Canada.

20         THE COURT:  Is there anything else from the defense?

21         MR. RICCO:  No, Your Honor.  Thank you very much.

22         THE COURT:  Okay.  All right.  Then we will get

23   these finalized.

24         You wanted to think about something so could we put

25   a time by which you will decide whether or not you want to

1 have the indictment go back and whether --

2 　　　　　MR. RICCO:  Judge, I'll be happy to get back to the

3 Court as soon as I can get it from the government.

4 　　　　　MR. MOODY:  I'll work on it right when I get back

5 and try to send it as soon as I can.

6 　　　　　MR. RICCO:  And we'll contact Chambers because we're

7 going to stay in the building probably until about 11, 11:30

8 working.

9 　　　　　THE COURT:  Okay.  All right.

10 　　　　　MR. RICCO:  So we'll be here.

11 　　　　　THE COURT:  If you need anything, let us know.

12 　　　　　MR. RICCO:  Okay.

13 　　　　　MS. SHWEDER:  Your Honor, my only question was, I'm

14 sorry because I missed it, are you omitting Footnote 1

15 completely?

16 　　　　　THE COURT:  Yes, that was just a note to us.

17 　　　　　MS. SHWEDER:  Yes, I just wanted to make sure.

18 　　　　　THE COURT:  Footnote 2, I think, should also come

19 out because it's weird to have a footnote in the instructions

20 unless you disagree.  It's on page 47.

21 　　　　　MR. MOODY:  Yes.

22 　　　　　MS. SHWEDER:  Yes.

23 　　　　　MR. RICCO:  Yes.

24 　　　　　MR. MOODY:  Definitely remove that because the

25 reference is to the burden shift.

1          THE COURT:  You wanted the aiding and abetting and

2    there was no objection to that?

3          MR. RICCO:  No objection.

4          MR. MOODY:  Yes, Your Honor.

5          THE COURT:  All right.  Let us know if anything else

6    comes up.  Okay?

7          MR. MOODY:  Thank you.

8          MR. RICCO:  Thank you.

9          MS. SHWEDER:  Thank you, Your Honor.

10          Your Honor is it okay to stay in the courtroom to go

11   through the exhibits?

12          THE COURT:  Yes, of course.  What we do is send all

13   the exhibits back so please be on the same page about that.

14          MS. SHWEDER:  Exactly.

15          THE COURT:  And then when we get a request for a

16   readback, what we'll do is pull the transcripts and you two

17   will decide what makes sense and then we have to figure out

18   how to excise sidebars -- there were no sidebars.

19          MS. SHWEDER:  Just one.

20          MR. GOPSTEIN:  There was one sidebar for 30 seconds.

21          THE COURT:  That's wonderful.  So excise all the

22   colloquy between Court and counsel or whatever.  Okay?

23          MR. RICCO:  So, Judge, to the answer to the

24   question, we spent a lot of time talking about, you know, what

25   either side was going to be presenting before we got here.  We

1   spent a lot of time going back and forth.

2          THE COURT:  I appreciate that.  I'll tell you

3   sometimes we have cases where they fight about everything and

4   those cases do go the full length and beyond, so I appreciate

5   the cooperation between counsel.

6          MR. GOPSTEIN:  Your Honor, I have your charge from a

7   prior trial that may have gone 11 weeks that had one or two

8   sidebars that I was using as a reference.

9          THE COURT:  Oh, yes, I do remember that one very

10  well.

11         Thank you.

12         MR. RICCO:  Thank you very much.

13         MR. MOODY:  Thank you, Your Honor.

14         THE COURT:  Have a nice day.

15         (Matter adjourned to January 16, 2020 at 9:00 a.m.)

16

17

18

19

20

21

22

23

24

25