

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GMM/DG
F.#2016R02185

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 17, 2021

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   United States v. Donville Inniss
>        Criminal Docket No. 18-134 (S-2)(KAM)

Dear Judge Matsumoto:

       The government respectfully submits this letter in response to the defendant's pro se motion for release on bail pending appeal in the above-referenced matter. (Dkt. No. 147). The Court should deny the defendant's motion for two reasons. First, the defendant is represented by counsel and, therefore, the Court should not entertain his pro se motion for release on bail pending appeal. Second, the defendant's claim on appeal is foreclosed by Second Circuit precedent and, therefore, he has not raised a substantial question of law or fact that is likely to result in reversal.

    I.    Background

       On January 16, 2020, following a jury trial, the defendant was convicted of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A), 1956(h), and two counts of international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A). On February 22, 2020, the defendant filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. (Dkt. No. 112). On July 24, 2020, this Court denied the defendant's Rule 29 motion. (Dkt. No. 115). On April 27, 2021, the defendant was sentenced to 24 months' imprisonment.

       On May 6, 2021, the defendant filed a notice of appeal and, on November 24, 2021, the defendant filed his opening appeal brief before the Second Circuit. United States v. Inniss, No. 21-1221 (2d Cir. Nov. 24, 2021) at Dkt. No. 38. On December 2, 2021, the defendant's pro se motion for release on bail pending appeal was entered on this Court's docket.[1] The defendant is serving his sentence and has a projected release date of April 9, 2023.

---

[1] The defendant's pro se motion was filed on November 12, 2021.

II.   The Evidence

At trial, which began on January 13, 2020, the government introduced testimony from six witnesses and documentary evidence—including emails, text messages and bank records—establishing that, in 2015 and 2016, the defendant accepted two bribe payments from the Insurance Corporation of Barbados Ltd. ("ICBL"), an insurance company in Barbados, and laundered those payments through bank accounts in New York.[2]  The defendant, formerly Barbados's Minister of Industry, International Business, Commerce and Small Business and Development ("Minister of Industry") and a member of the Barbados Parliament, accepted bribes from Ingrid Innes and Alex Tasker, both of whom were senior executives at ICBL.  The bribe payments were sent from a bank account in Bermuda to a bank account in New York to secure ICBL's business with the Barbados Investment and Development Corporation ("BIDC"), a Barbadian government agency that the defendant oversaw.

Innes and Tasker agreed to pay bribes to the defendant for assisting ICBL with obtaining two insurance contracts from the BIDC.  They arranged to make the bribe payments through BF&M Ltd. ("BF&M"), ICBL's parent company in Bermuda, and Crystal Dental Lab ("CDL"), a company with an address in Elmont, New York, and run by the defendant's associate, Roger Clarke.

On August 17, 2015, BF&M sent a $16,536.73 bribe payment from a bank account in Bermuda to CDL's bank account in New York.  That amount – $16,536.73 – equaled exactly five percent of ICBL's premium ($661,469.30 Barbadian dollars, the equivalent of $330,734.65 U.S. dollars) on its 2015 contract with the BIDC.  Two days later, almost all of that money ($16,000) was deposited in a Bank of America account in the defendant's name.

On April 18, 2016, BF&M sent a $20,000 bribe payment from a bank account in Bermuda to CDL's bank account in New York.  Approximately one week later, almost all of that money ($19,750) was deposited into the defendant's bank accounts in the United States. The funds were divided into three payments ($9,000, $8,000 and $2,750) and deposited into three different accounts in the defendant's name.

III.   The Motion for Bail Pending Appeal and Governing Standards

The defendant argues in his motion for release on bail pending appeal that his convictions are likely to be reversed due to insufficient proof of "secondary" money laundering following his receipt of two bribes—an argument that he raises for the first time on appeal.  This claim, however, is contrary to Second Circuit precedent.  Moreover, because the defendant is represented by counsel, this Court should not entertain this pro se motion.

Under 18 U.S.C. § 3143(b)(1), a sentenced defendant "shall" be detained pending appeal unless the court makes two independent findings.  First, in relevant part, the court must find "by clear and convincing evidence that the person is not likely to flee."  18 U.S.C.

---

[2] Given the nature of the defendant's claim, as well as the Court's familiarity with the record after presiding over the trial and issuing a written decision on the defendant's Rule 29 motion, the government provides only a brief summary of some of the evidence presented at trial.  (See Dkt. No. 115 (Memorandum & Order on Def.'s Rule 29 Motion)).

§ 3143(b)(1)(A).  Second, the court must find that the appeal raises "a substantial question of law or fact" likely to result in reversal or an order for a new trial.  18 U.S.C. § 3143(b)(1)(B).  A "substantial question" is "a close question or one that very well could be decided the other way." United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (internal quotation marks omitted).  If the court concludes that the raised question is not "close," its inquiry ends, and it must deny the motion for bail pending appeal.  However, if the court finds that the appeal does raise a question that is "close" enough to render it "substantial," the court must then make a second determination before it may decide to grant bail pending appeal.  The "substantial question" must be "so integral to the merits of the conviction . . . that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id. (internal quotation marks omitted).  If the question is "substantial" but nevertheless fails to meet this second requirement, the court must deny the motion.  With respect to all of these issues, "the burden of persuasion rests on the defendant," id., and there is a "presumption in favor of detention," United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004).  The defendant must "rebut this presumption with clear and convincing evidence." Id.

This framework and presumption give effect to Congress's view that "'[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it [absent] exceptional circumstances." United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985) (quoting H.R. Rep. No. 907, at 186-87 (1970)).

IV.    Argument

First, the defendant's pro se motion should be denied because the defendant is represented by counsel.  While criminal defendants possess both the right to appear pro se and to appointed counsel, ordinarily "those rights cannot both be exercised at the same time." Ennis v. LeFevre, 560 F.2d 1072, 1075 (2d Cir. 1977).  As a result, the Second Circuit has held that "a criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney." United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir.1989) (citing Ennis, 560 F.2d at 1075; United States v. Cyphers, 556 F.2d 630, 634 (2d Cir. 1977).  A district court does have the discretion to permit so-called "hybrid representation," Tutino, 883 F.2d at 1141; however, it need not do so unless a defendant can offer a "compelling reason," id., or show that "the interests of justice [would be] served by a defendant's supplementation of the legal services provided by his retained counsel." United States v. Swinton, 400 F. Supp. 805, 806 (S.D.N.Y. 1975).

Applying these principles, courts in the Second Circuit have declined to allow criminal defendants represented by counsel to simultaneously make pro se filings or appear pro se.  See, e.g., United States v. Wolfish, 525 F.2d 457, 462 (2d Cir. 1975) (finding that the defendant "had an experienced counsel and, so long as he retained him, he could not appear pro se"); Abdul-Matiyn v. Coughlin, 24 F. App'x 97, 99 (2d Cir. 2001) (finding that "so long as [the defendant] was represented by counsel, he could not appear pro se"); Tutino, 883 F.2d at 1141 (refusing to permit defendant to serve as co-counsel); United States v. Muyet, 985 F. Supp. 440, 441 (S.D.N.Y. 1998) (denying defendant's motion to submit pro se amendments to his attorney's post-trial motions); United States v. D'Souza, No. 88-CR-0374, 1992 WL 151920, at *2 (E.D.N.Y. Jun. 17, 1992) (Sifton, J.) (denying defendant's pro se motions without prejudice to later presentation through counsel).

3

The defendant has failed to present a "compelling reason" demonstrating that he should be permitted to file a pro se motion while represented by counsel, or that the "interests of justice" would be served by him doing so.

Second, the defendant's motion should be denied because the defendant has not met his burden of showing that his appeal raises a substantial question of law or fact. The defendant argues that his conviction must be reversed because the government failed to prove at trial—or allege in the Superseding Indictment—that the defendant "first received the bribe, and then subsequently engaged in a financial transaction." (Dkt. No. 147 at 6). The defendant effectively contends that the same offense conduct cannot serve as the basis for international money laundering and the specified unlawful activity for the money laundering offense. (See id. 4-6). This argument, however, has previously been rejected by the Second Circuit in United States v. Piervinanzi, 23 F.3d 670 (2d Cir. 1994).

In Piervinanzi, the defendant took part in a bank fraud, wire fraud, and money laundering conspiracy that involved attempting to transfer stolen funds from a bank account in New York to a bank account in London. See 23 F.3d at 673-74. Among other crimes, the defendant was charged with international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). See id. at 677.[3] The defendant argued that "because the asserted criminal laundering activity, the overseas transfer of the bank funds, was simply a component of the bank frauds that the conspirators attempted to perpetuate against [the banks], there was no analytically distinct 'secondary' activity, and thus no criminal laundering violative of § 1956(a)(2)." Id. at 678. The Second Circuit disagreed and found that:

> Section 1956(a)(1), the domestic money laundering statute, penalizes financial transactions that 'involv[e] . . . the proceeds of specified unlawful activity.' The provision requires first that the proceeds of specified unlawful activity be generated, and second that the defendant, knowing the proceeds to be tainted, conduct or attempt to conduct a financial transaction with these proceeds with the intent to promote specified unlawful activity. By contrast, § 1956(a)(2) contains no requirement that 'proceeds' first be generated by unlawful activity, followed by a financial transaction with those proceeds, for criminal liability to attach. Instead, it penalizes an overseas transfer 'with the intent to promote the carrying on of specified unlawful activity.'

Id. at 679-80 (citations omitted). The Circuit rejected the defendant's argument that "the overseas transmission of funds 'merges' with the underlying bank fraud, precluding independent liability under § 1956(a)(2)" and found that the attempted international transfers "promote[d]" the underlying bank fraud schemes because they were integral to the success of those schemes.

___

[3] 18 U.S.C. § 1956(a)(2)(A) provides, in relevant part, that "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—(A) with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both."

4

Id. at 679; see also United States v. Root, 777 F. App'x 536, 539 (2d Cir. 2019) ("[Defendant] argues that a money laundering conviction under 18 U.S.C. § 1956(a)(2)(A) requires conduct that is analytically distinct from the underlying criminal activity that it promotes . . . [b]ut § 1956(a)(2)(A) contains no such requirement" (citations and internal quotations omitted)); United States v. Krasinski, 545 F.3d 546, 551 (7th Cir. 2008) (stating that "[t]he absence of a 'proceeds' requirement in section 1956(a)(2)(A) reflects that Congress decided to prohibit any funds transfer out of the country that promotes the carrying on of certain unlawful activity" (citing Piervinanzi, 23 F.3d at 680)); United States v. Tajideen, 319 F. Supp. 3d 445 (D.D.C. 2018) (following Piervinanzi and finding that "§ 1956(a)(2) does not require a distinct act of money laundering separate and apart from the transactions that allegedly violated [the International Emergency Economic Powers Act (IEEPA)] and constituted the [specified unlawful activity] for money laundering]" (citation and internal quotations omitted)); United States v. Zarrab, No. 15 CR 867 (RMB), 2016 WL 6820737, at *16 (S.D.N.Y. Oct. 17, 2016) (same) (citing Piervinanzi, 23 F.3d at 679; United States v. Nazemzadeh, No. 11 CR 5726 L, 2014 WL 310460, at *12 (S.D. Cal. Jan. 28, 2014) (same) (citing Piervinanzi, 23 F.3d at 680).[4]

Here, the defendant makes the same argument that the Second Circuit rejected in Piervinanzi: namely, that his conviction should be overturned because the government did not prove that he first received the bribery "proceeds," and then engaged in a financial transaction in violation of the federal money laundering laws. (Dkt. No. 147 at 6).  Notably, all of the cases that the defendant relies on concern provisions of the domestic money laundering statute that involve the "proceeds" of specified unlawful activity.  (Id.).  None of those decisions address international money laundering prohibited by § 1956(a)(2)(A) or the Second Circuit's holding in Piervinanzi concerning international money laundering.  See United States v. McCarthy, 271 F.3d 387, 394 (2d Cir. 2001); United States v. Napoli, 54 F.3d 63, 68 (2d Cir. 1995); United States v. Conley; 37 F.3d 970, 980 (3d Cir. 1994); United States v. Paramo, 998 F.3d 1212 (3d Cir. 1993); United States v. Lovett, 964 F.2d 1029 (10th Cir. 1992).  Indeed, in Napoli, a case cited by the defendant, the Second Circuit reaffirmed its decision in Piervinanzi by noting that the two-step analytical process required by the domestic money laundering statute—that the defendant "(1) acquire proceeds of a specified unlawful activity, and then (2) engage in a financial transaction with those proceeds"—is "not required with respect to the offense of international money laundering."  54 F.3d at 68 n.4 (citing Piervinanzi, 23 F.3d at 679-82).

At trial, the government proved that the defendant and his co-conspirators caused transfers of $16,536.73 and $20,000, respectively, from Bermuda to New York in furtherance of a bribery scheme that violated the Prevention of Corruption Act of Barbados.  Those international transfers promoted a violation of an offense against a foreign nation involving "bribery of a public official," 18 U.S.C. § 1956(c)(7)(B)(iv)—the specified unlawful activity for Counts One through Three of the Superseding Indictment—because they were "integral to the success" of the bribery scheme.  See Piervinanzi, 23 F.3d at 679.  The government therefore was not required to prove that the defendant first received bribery "proceeds" and then conducted secondary money laundering transactions.  Given the Second Circuit's ruling in Piervinanzi, the defendant has not met his burden of showing a substantial issue of law or fact.

---

[4] The Circuit in Piervinanzi also rejected the defendant's argument that "a defendant may be deemed to 'promote the carrying on of specified unlawful activity' only when the laundering would promote subsequent criminal activity."  23 F.3d at 682 (emphasis in original).

V.     Conclusion

        For the reasons set forth above, the defendant's pro se motion for release on bail pending appeal should be denied.

                                         Respectfully submitted,


BREON PEACE                                          JOSEPH BEEMSTERBOER
United States Attorney                               Acting Chief, Fraud Section
                                                     Criminal Division
                                                     U.S. Department of Justice


By:     ___/s/_____          By:     ___/s/_____
        David Gopstein                          Gerald M. Moody, Jr.
        Assistant U.S. Attorney                 Assistant Chief
        (718) 254-6153                          U.S. Department of Justice
                                                (202) 616-4988


cc:     Joel Hirschhorn, counsel to Donville Inniss (by ECF)