# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

MANDATE <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand twenty-two.

**PRESENT:**
    **JOHN M. WALKER, JR.,**
    **ROSEMARY S. POOLER,**
    **MICHAEL H. PARK,**
        *Circuit Judges.*

---

**UNITED STATES OF AMERICA,**

    *Appellee*,

    v.                                        21-1211

**DONVILLE INNISS,**

    *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | Joel Hirschhorn, GrayRobinson, P.A., Miami, FL. |
| **FOR APPELLEE:** | Jo Ann Navickas, David Gopstein, *for* Breon Peace, U.S. Attorney for the Eastern District of New York, Brooklyn, NY; Gerald M. Moody, Jr., *for* Joseph Beemsterboer, Acting Chief, Fraud Section, Criminal Division for the U.S. Department of Justice, Washington, D.C. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Donville Inniss was the Minister of Industry, International Business, Commerce, and Small Business Development of Barbados ("Minister of Industry"), and in that position, he oversaw the Barbados Investment and Development Corporation ("BIDC"), a Barbadian government agency. The BIDC maintained a portfolio of government-owned property that needed to be insured. In August 2015 and April 2016, Inniss accepted bribe payments from the Insurance Corporation of Barbados Ltd. ("ICBL"), a private Barbadian insurance company, in connection with the renewal of its 2015 and 2016 insurance contracts with the BIDC. After a jury trial, Inniss was convicted of one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and two counts of money laundering, 18 U.S.C. § 1956(a)(2)(A), and he was sentenced to 24 months' imprisonment and 24 months' supervised release. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Sufficiency of the Evidence

Inniss's arguments that there was insufficient evidence for his money laundering convictions are unavailing. First, he argues that "[a]t trial the Government proved that [Inniss] received bribes, not that he laundered the proceeds of those bribes" and "[t]here was no evidence presented to the jury regarding subsequent money laundering activity" after receiving the bribes. Appellant's Br. at 9, 11. As Inniss acknowledges in his reply brief, this argument was squarely rejected by this Court in *United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994), in which we stated that the statutory provision Inniss was convicted under—section 1956(a)(2)—"contains no

requirement that 'proceeds' first be generated by unlawful activity, followed by a financial transaction with those proceeds, for criminal liability to attach."[1] *Id*. at 680. The government did not have to prove that Inniss laundered the proceeds of the bribes after receiving them to convict him under section 1956(a)(2)(A).

Second, Inniss argues that the international transfer of funds did not "promote the carrying on of specified unlawful activity," which in this case was bribery, because it did not ensure the continuing operation of the bribery scheme. 18 U.S.C. § 1956(a)(2)(A). Again, this Court in *Piervinanzi* rejected the argument that "a defendant may be deemed to promote the carrying on of a specified unlawful activity *only* when the laundering would promote subsequent criminal activity." 23 F.3d at 682 (internal quotations omitted). Promotion of a specified unlawful activity ("SUA") can also occur when the international transfer was "integral to the success" of the scheme, *id.* at 679, or "essential to the completion of the scheme," *United States v. Thorn*, 317 F.3d 107, 133 (2d Cir. 2003). Here, the international transfers were integral to the success and essential to the completion of the scheme because they were necessary to move the bribe payments from ICBL to Inniss and for Inniss to profit from the scheme.[2] We thus reject Inniss's sufficiency of the evidence arguments.

---

[1] *Compare* 18 U.S.C. § 1956(a)(1) ("Whoever, knowing that the property involved in a financial transaction represents the *proceeds* of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the *proceeds* of specified unlawful activity . . . ." (emphases added)), *with* 18 U.S.C. § 1956(a)(2) ("Whoever transports, transmits, or transfers . . . a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . .").

[2] We decline to consider Inniss's argument that *Piervinanzi* should be overruled because it was raised for the first time in his reply brief. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."). In any event, we are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *Johnson v. United States*, 779 F.3d 125, 128 (2d Cir. 2015) (citation omitted).

## II. Jury Instructions

We are also unpersuaded by Inniss's challenges to the jury instructions. Inniss did not object to the district court's jury instructions, so we review his arguments for plain error. *See United States v. Miller*, 954 F.3d 551, 557 (2d Cir. 2020). "We review a jury instruction challenge *de novo*, but we will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) (citation omitted).

First, Inniss challenges the district court's instruction that "[a] person may know, be related to, or be friendly with a criminal without being a criminal himself." App'x at 677. But Inniss waived this argument because he requested the instruction he now challenges. *See United States v. Kosinski*, 976 F.3d 135, 153 (2d Cir. 2020) ("[I]f a party invited the charge . . . [he] has waived any right to appellate review of the charge." (quoting *United States v. Giovanelli*, 464 F.3d 346, 351 (2d Cir. 2006)). In any event, Inniss's challenge fails on the merits because the court correctly instructed the jury that mere association with a conspirator does not make Inniss a co-conspirator. *See United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020) ("We are reassured by the District Court's express direction to the jury that . . . '[a] person may know or be friendly with a criminal without being a criminal himself.'" (citation omitted)).

Second, Inniss argues that the district court contradicted its instruction that Inniss needed to have specific intent to promote the carrying on of the SUA when it also stated, "[t]he government need not prove that the defendant was aware of the specific provision of the law that he is charged with violating or any other specific provision, providing that he had knowledge that his conduct was, in a general sense, unlawful." App'x at 685. There is, however, no inconsistency between instructing that the government needed to prove that Inniss acted with specific intent to promote

bribery and that Inniss did not need to know the specific provision of law he was violating as long as he knew that promoting bribery was generally unlawful. The district court thus did not err.

Third, Inniss challenges the district court's instruction that "[i]f accomplice witnesses could not be used, there could be many cases in which there was real guilt and conviction should be had, but in which the convictions would be unobtainable." App'x at 694. "[T]here is no talismanic formula for an instruction on accomplice testimony." *United States v. Vaughn*, 430 F.3d 518, 523 (2d Cir. 2005) (citation omitted). "[D]istrict courts need only fairly put the issue of a cooperating witness's possible motivations to the jury for its consideration." *Id.* at 523–24. Here, the district court did so by instructing the jury twice that they needed to consider the accomplice witness's testimony with "care and caution" and asked them to consider whether the witness "would benefit more by lying or by telling the truth," whether "her testimony [was] made up in any way because she believed or hoped that she would somehow receive favorable treatment by testifying falsely," and whether she was "motivated by hopes of personal gain." App'x at 693, 695–96. And in *United States v. Hamilton*, 538 F.3d 162 (2d Cir. 2008), we rejected a defendant's challenge to an instruction that used essentially the same language the district court did here, including the portion challenged by Inniss. *See id.* at 173; Brief of Defendant-Appellant, *United States v. Hamilton*, No. 06-2933, 2006 WL 6194306 (2d Cir. Oct. 4, 2006). The Court in *Hamilton* noted that the instruction was "considerably more favorable to the defendant than the charge we upheld in [*Vaughn*]" because "the district court pointed out the specific risk that the accomplice might falsify or color her testimony in the hopes of 'personal gain' in the nature of 'favorable treatment.'" 538 F.3d at 173. We are thus unpersuaded by Inniss's third jury instruction challenge.

Fourth, Inniss argues that the district court erred by omitting an essential element of the

alleged specified unlawful activity. Inniss asserts that in order to be a qualifying SUA under section 1956(a)(2)(A), it must be a felony, and only bribery in relation to a government contract is a felony under Barbadian law. Inniss contends that the district court erred because it failed to instruct that the bribery needed to be in relation to a government contract. This argument fails because there is no requirement that the qualifying SUA under section 1956(a)(2)(A) be a felony. To be sure, section 1956(c)(1) states that the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" requires that the unlawful activity constitutes a felony. But section 1956(a)(2)(A) does not use this term and there is nothing else in the statute that requires the underlying SUA to be a felony. Thus, even if the district court completely neglected to instruct on a government contract connection, the charge was correct because bribery unrelated to a government contract is also a qualifying SUA.[3]

\*      \*      \*

We have considered the remainder of Inniss's arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[3] "[T]he term 'specified unlawful activity' means . . . an offense against a foreign nation involving . . . bribery of a public official . . . ." 18 U.S.C. § 1956(c)(7)(B)(iv).