

U.S. Department of Justice

Criminal Division

*Peter L. Cooch*
*Criminal Division, Fraud Section*
*1400 New York Avenue, N.W.*
*Bond Building, 11th Floor*
*Washington, D.C. 20530*

*Telephone: (202) 924-6259*
*Email: peter.cooch@usdoj.gov*

December 22, 2023

**VIA CM/ECF**

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Donville Inniss
     <u>Criminal Docket No. 18-134 (KAM)</u>

Dear Judge Matsumoto:

  The government respectfully submits this opposition to the <u>pro se</u> petition of Donville Inniss ("Inniss" or "petitioner") under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (the "Petition" or "Pet."). In the Petition, Inniss argues that he was deprived of his Sixth Amendment right to effective assistance of counsel. Because the arguments in the Petition are meritless, the government respectfully requests that the Court deny it without a hearing.

**I. Background**

  **A. The Indictment and Trial**

  On August 1, 2019, a grand jury sitting in the Eastern District of New York returned a three-count, second superseding indictment (the "Second Superseding Indictment"), charging Inniss and two others with one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), and two counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A), 2. Dkt. No. 50.

  As set forth in further detail below, the charges stemmed from a bribery and money laundering scheme in which Inniss, formerly the Minister of Industry, International Business, Commerce, and Small Business and Development of Barbados ("Minister of Industry") and an elected member of the Barbados Parliament, accepted bribes from Ingrid Innes and Alex Tasker, both of whom were senior executives at the Insurance Corporation of Barbados Ltd. ("ICBL"), an insurance company in Barbados. Inniss also laundered the bribe payments

1

through bank accounts in the United States.

Trial in the matter began on January 13, 2020. On January 16, 2020, the jury convicted Inniss of all three counts of the Second Superseding Indictment.

### B. The Government's Case at Trial

At trial, the government proved beyond a reasonable doubt that Inniss was guilty of the crimes charged. The government's evidence – which included testimony from six witnesses and documentary evidence, including emails, text messages, and bank records – proved the following.

In 2015 and 2016, Inniss, an elected official of the Barbados Parliament, accepted bribes from Ingrid Innes and Alex Tasker to secure ICBL's business with the Barbados Investment and Development Corporation ("BIDC"), a Barbadian government agency that Inniss oversaw.[1] The two bribe payments were laundered through bank accounts in the United States.

The 2015 Bribe. In 2015, the BIDC was deciding which insurance companies would insure its properties, which were worth more than $100 million. See GX 123. The prior year, the BIDC had used three insurance companies: (i) ICBL, which had a 50% share of the BIDC's business; (ii) Consumers' Guarantee Insurance ("CGI"), which had 30%; and (iii) Trident Insurance ("Trident"), which had 20%. Id. CGI and Trident were competitors of ICBL. In March 2015, the BIDC management recommended that the BIDC continue the same insurance arrangement from 2014. GX 111-A. Shortly after receiving this recommendation, the BIDC solicited proposals from insurance brokers for the BIDC business and, after receiving a number of proposals, in June 2015 the BIDC management again recommended that the BIDC "retain the current trio of insurers with the existing 50% (ICBL), 30% (CGI), & 20% (Trident) ratio." GX 121. However, according to BIDC board minutes, the board reversed course and, on June 22, 2015, decided to award ICBL a 70% share and CGI a 30% share. See GX 125, 126.

In July 2015, Inniss met with Innes to discuss the renewal of ICBL's contracts with the BIDC. Trial Transcript ("T.") 167. Following her meeting with Inniss, Innes told Goulbourne Alleyne, the Deputy Chief Executive Officer of ICBL, that Inniss "has given instructions to proceed with the insurance contract." T. 168-69; GX 35. In or about between June 22, 2015, and July 15, 2015, the BIDC awarded and finalized the 2015 insurance contract to ICBL and one competitor, pursuant to which ICBL secured 70% of the business worth $661,469.30 Barbadian dollars. GX 37. BIDC awarded ICBL the increased share despite recent recommendations by the BIDC management that the BIDC retain the trio of insurers with their existing shares of the business. See GX 111-A, 121, 125, 126.

In or about and between June 22, 2015 and July 15, 2015, the BIDC awarded and finalized the 2015 insurance contract to ICBL and CGI. GX 37, 128, 130. ICBL received a 70% share and CGI received a 30% share. The term of the contract was from July 15, 2015 to April 1, 2016, and the total premium on ICBL's portion of the business was $661,469.30 Barbadian dollars. GX 37.

---

[1] In his role as Minister of Industry, the defendant oversaw the BIDC and appointed its board of directors. See, e.g., GX 113, 134, 139.

In August 2015, Kamante Millar, the former Chief Financial Officer of ICBL, attended a meeting with Innes and Tasker. During the meeting, Innes said that ICBL needed to make an urgent payment in U.S. dollars to Inniss for a "referral bonus." T. 42-43, 45. After the meeting, Tasker gave Millar a piece of paper with bank account information for a company called Crystal Dental Lab ("CDL") in New York. Tasker told Millar it was Inniss's company in the United States. T. 51; GX 38. In reality, CDL was a dental company was run by Inniss's associate, Roger Clarke. See GX 92 – 92-S. It conducted no business with ICBL in 2015 or 2016. T. 188-89.

After Tasker provided Millar with CDL's bank account information, Millar asked Tasker how much the payment to Inniss would be. Tasker responded by giving Millar the amount of the premium on the insurance contract and the rate for determining Inniss's payment. T. 52. Miller multiplied the premium times the rate to determine that the payment to Inniss would be $16,536.73. T. 52, 54, 57. Millar then created a fake invoice dated August 10, 2015, from CDL to ICBL for that amount, and sent it for processing. T. 55; GX 41.

In the days leading up to this meeting, Inniss had a number of communications with Tasker. Specifically, on August 5-6, 2015, Inniss and Tasker exchanged text messages about meeting in person and speaking on the phone. GX 39. On August 9, 2015, Tasker sent Inniss a text message that stated, in part: "Do not forget to drop off the letter in the am." Id. The following day, August 10, 2015, Inniss sent himself an email, the subject of which was "bank," that included bank account information for an account in the name of CDL at Bank of America. GX 40. That bank account information was the same account information that was on the paper that Tasker provided Millar, and that Millar then entered in the fake August 10, 2015 invoice from CDL to ICBL. GX 41. The amount of the invoice – $16,536.73 – equaled exactly five percent of ICBL's premium ($661,469.30 Barbadian dollars, the equivalent of $330,734.65 U.S. dollars) on its 2015 contract with the BIDC. T. 344-45.

On August 17, 2015, ICBL's parent company sent $16,536.73 to CDL's bank account in New York. GX 44. Two days later, almost all of that money ($16,000) was deposited in a Bank of America account in Inniss's name. GX 5, 18.

The 2016 Bribe. On April 5, 2016, four days after ICBL's 2015 contract with the BIDC expired, Inniss sent Tasker an email, the subject of which was "crystal invoice," attaching a $20,000 invoice from CDL to ICBL for "consultancy services" from June 2015 through February 2016. GX 54, 54-A. CDL provided no consultancy services for any services for ICBL in 2015 or 2016. T. 188-89.

Around the same time that Inniss sent Tasker the $20,000 invoice, Tasker told Millar that the business Inniss had referred to ICBL in August 2015 was up for renewal and that ICBL needed to make a $20,000 payment to him. T. 76. When Millar asked Tasker why the payment was not the exact amount of the premium times the rate for the referral, Tasker told her that "we decided" to make a round payment. Id. Millar then used the template for the invoice that she had created in August 2015, and created a second fake invoice from CDL to ICBL requesting a $20,000 payment for "consulting services" that were never provided. T. 77; GX 51.

On April 7, 2016, Millar emailed the invoice she had created to ICBL's parent

3

company for processing and payment. GX 55. Emails among Millar, Innes, and Tasker about the payment to CDL show that the payment amount was based on the size of the insurance premium paid by BIDC to ICBL for the 2016 contract. See GX 56; 56-A. On April 18, 2016, ICBL's parent company sent $20,000 to CDL's bank account in New York. GX 58. Approximately one week later, almost all of that money ($19,750) was deposited into Inniss's bank accounts in the United States. The money was divided into three payments ($9,000, $8,000 and $2,750) and deposited into three different accounts in Inniss's name. See GX 2, 6, 14, 16.

In October 2016, the finance department of ICBL's parent company began investigating the two payments to CDL. T. 143. During a subsequent phone conversation, the CEO of ICBL's parent company, John Wight, questioned Innes and Tasker about the purpose of the two payments and told them that the payments were bribes. After the call, Innes said "Oh my God, I can get fired for this." T. 101-103. During the same time period, Innes told Alleyne that the payments to CDL were for BIDC business. T. 190.

### C. **Defendant's Rule 29 Motion**

On February 22, 2020, Inniss filed a motion to vacate the guilty verdict pursuant to Federal Rule of Criminal Procedure Rule 29(c). Inniss challenged the sufficiency of the government's evidence, arguing that it failed to prove that Inniss was part of a scheme to induce a bribe and that the payments to Inniss were corrupt or represented payments for a favorable vote. Dkt. No. 112, Ricco Decl. at 3-4; Dkt. No. 112-1, "Def. Mem." at 3.

On July 24, 2020, the Court denied Inniss' Rule 29 motion. Dkt. No. 115. The Court concluded that "the government presented substantial evidence at trial that both bribe payments to Mr. Inniss were made to secure [ICBL's] contracts with [BIDC]." Id. at 5. The Court's opinion detailed the government's evidence in the case, including evidence that Inniss was involved in securing the contracts for ICBL. See, e.g., id. at 6 ("Ms. Innes told Ms. Millar that ICBL needed to make an urgent payment in USD to Mr. Inniss for a 'referral bonus'"); at 9 (". . . payment amounts were evidence that the payments to Mr. Inniss were a reward for ICBL's securing two contracts"); at 10 (evidence established that "Mr. Inniss gave 'instructions to proceed' with the ICBL contract"). The Court also noted that "under the Prevention of Corruption Act of Barbados, evidence that the public official actually performed the act or refrained from performing the act is unnecessary." Id. at 10.

### D. **Sentencing and Appeal**

On April 29, 2021, Inniss was sentenced to 24 months' imprisonment on each count to be served concurrently, followed by 24 months of supervised release. Dkt. No. 132. Inniss was also ordered to pay a $300 special assessment.

Inniss timely appealed his verdict. Inniss argued there was insufficient evidence to prove money laundering and challenged the Court's jury instructions. Inniss' appeal did not raise ineffective assistance of counsel claims. On October 5, 2022, the Second Circuit issued a summary order denying Inniss's appeal. United States v. Inniss, Case No. 21-1211, Dkt. No. 87-1 (2d. Cir. Oct. 5, 2022).

Inniss completed his term of incarceration on or about February 1, 2023, and was subject to a 24-month term of supervised release. Following his release from BOP, Inniss was

detained by ICE immigration authorities and deported to Barbados in early 2023 after filing the instant motion to vacate. According to U.S. Probation, Inniss is not actively supervised because he was deported from the United States.

## II. The Instant Petition

On February 13, 2023, Inniss filed the Petition, pro se, pursuant to 28 U.S.C. § 2255, arguing that his sentence should be vacated because his trial counsel was ineffective. Inniss advances four arguments in the Petition. Dkt. No. 154.[2] First, Inniss claims that trial counsel failed to analyze the BIDC Act and other laws of Barbados which he alleges would establish that he did not have legal authority to influence or issue the contracts. Id. at 1-4. Second, Inniss similarly complains that trial counsel failed to present evidence that the contracts were awarded via public tender and that Inniss was not involved in awarding the contracts. Id. at 4-5. Third, Inniss argues that trial counsel failed to investigate a list of witnesses provided by Inniss. Id. at 5-6. The motion does not name the witnesses; it instead claims that the witness list had the "titles and roles and likely testimony evidencing that the petitioner was not involved in the selection of insurers nor did the petitioner witness these decisions." Id. at 5-6. Fourth, Inniss claims that trial counsel failed to present evidence that the money he received was a political contribution and not for any other purpose and that the method of receiving such funds was typical for Barbados and insurance companies. Id. at 7.

On September 5, 2023, Inniss filed a supplemental memorandum in support of the Petition (the "First Supplement"). Dkt. No. 164. The First Supplement addresses Inniss's arguments from the Petition regarding the role of the BIDC, his trial counsel's purported failure to investigate witnesses, and his claim that the bribe payments were a political contribution. Id. at 1-7. The First Supplement raised additional claims concerning his trial counsel's purported failures to cross-examine witnesses and introduce evidence. Id. at 7-8.

Inniss filed a second supplemental memorandum in support of the Petition on November 14, 2023 (the "Second Supplement"). Dkt. No. 170. In the Second Supplement, Inniss argues that trial counsel was "constructively absent" from trial preparation and the trial proceedings, and that his conviction should therefore be overturned pursuant to U.S. v. Cronic, 466 U.S. 648 (1984). Id. at 7.

## III. Argument

For the reasons set forth below, Inniss's claim of ineffective assistance of counsel is without merit and the Petition should be dismissed without a hearing.

### A. Legal Standard

The Sixth Amendment guarantees the right of "effective assistance of counsel" to criminal defendants. Strickland v. Washington, 466 U.S. 668, 686 (1984). Strickland created a two-pronged test that defendants must satisfy to establish constitutionally ineffective assistance of counsel. First, counsel's representation must "[fall] below an objective standard of

---

[2] Petitioner states three grounds in his motion. Ground One includes two arguments—one pertaining to an alleged failure to investigate and a second concerning an alleged failure to present evidence.

5

reasonableness." Id. at 688. Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. This means that even a "professionally unreasonable" error by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Inniss bears the burden of demonstrating ineffective assistance of counsel, see Chang v. United States, 250 F.3d 79, 84, 86 (2d Cir. 2001), and "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The two-prong Strickland standard is "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

Moreover, judicial scrutiny of counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As such, in order to constitute ineffective assistance of counsel, the petitioner must show that defense counsel's representation "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman, 477 U.S. at 381. Counsel's performance is evaluated from counsel's perspective at the time of the alleged error. Id. Assessments of the reasonableness of counsel's performance should be done "bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).

While a client has a right to effective assistance of counsel, trial counsel is not required to follow every lead or present every possible defense or argument at trial. Rather, a criminal defendant's right to effective assistance of counsel includes the right to an attorney who makes "reasonable investigations" or "a reasonable decision that makes particular investigations unnecessary." Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 691). This duty does not "compel counsel to conduct a comprehensive investigation of every possible lead or defense . . . or to scour the globe on the off-chance something will turn up." United States v. Caracappa, 614 F.3d 30, 47 (2d Cir. 2010) (internal citations and quotation marks omitted). "[W]hen there is 'reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.'" Greiner, 417 F.3d at 321 (quoting Strickland, 466 U.S. at 691).

Defense counsel also has wide latitude to decide questions of trial strategy, including what evidence to present and which arguments to advance during trial. See Gonzalez v. United States, 553 U.S. 242, 249 (2008) ("Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial."). Courts must accord defense counsel significant deference regarding his or her decision to present a defense. See Eze v. Senkowski, 321 F.3d 110, 132 (2d Cir. 2003). Indeed, "[i]t frequently is sound trial strategy to leave the government to its proof and not present witnesses or otherwise attack each and every element of the crimes charged." Mason v. United States, No. 01-CR-376, 2006 WL 2168971, at *3 (N.D.N.Y. July 29, 2006).

6

The Second Circuit has explained, for example, that "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Greiner, 17 F.3d at 323 (internal citation omitted). Accordingly, "counsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'" Id. (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (rejecting ineffective assistance claim concerning a determination not to call a specific witness)). Moreover, an attorney's concern that calling a particular witness could "open[] the door" to potentially damaging testimony is a sound tactical basis for deciding not to call that witness. Best, 219 F.3d at 202 (rejecting ineffective assistance claim based on decision not to call a particular witness).

### B. Defense Counsel's Performance Was Not Ineffective

As set forth in detail below, the Court should deny the Petition because Inniss did not receive ineffective assistance of trial counsel.

      a. Alleged Failure to Analyze BIDC Act and Other Unspecified Barbadian Laws

Inniss first alleges that his trial counsel failed to analyze the BIDC Act and other unspecified "laws of Barbados which would establish that Inniss did not have the authority to influence or issue a contract." Dkt. No. 154 at 4. This argument lacks merit. Inniss points to no specific provision of Barbadian law establishing that Inniss did not have authority to influence the BIDC or cause it to issue a contract. To the contrary, he cites to Section 10 of the BIDC Act, which establishes the opposite—that Inniss had authority over the BIDC. Dkt. No. 164 at 2. ("The Minister may, after consultation with the Chairman of the Board, give directions of a general nature . . . and the Board shall comply with the directions."). The evidence at trial also showed that, as Minister of Industry, Inniss oversaw the BIDC, appointed its board and was the recipient of its annual report. See GX 113, 134, 139. With this power over the BIDC, Inniss was clearly in a position to influence it, whether formally or informally. See, e.g., GX 118, Email from Inniss to CEO of the BIDC ("I will no longer tolerate such in my Ministry").

Defense counsel has no duty to investigate or advance at trial a meritless argument. See, e.g., Baran v. United States, 160 F. Supp. 3d 591, 599 (S.D.N.Y. 2016) (rejecting the defendant's claim that she was denied the effective assistance of counsel due to defense counsel's failure to investigate because the defendant only speculated as to what defense counsel might have found upon such investigation and the effect such evidence might have had upon the verdict); Donato v. United States, No. 09-cv-5617, 2012 WL 4328368, at *6 (E.D.N.Y. Sept. 20, 2012) (holding that the defendant's speculation that additional exculpatory evidence was "possibly available" "satisfies neither Strickland's deficient performance nor prejudice prongs."); McPherson v. Greiner, No. 02-CV-2726 (DLC), 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003) (holding that speculation about "what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted [the defendant's] case . . . satisfies neither Strickland's deficient performance nor prejudice prongs."); see also United States v. Vrancea, No. 12-cr-198, 17-cv-5235, 2019 WL 6726829, at *6 (E.D.N.Y. Dec. 11, 2019) ("To succeed on a claim of ineffective assistance of counsel for failure to investigate . . . [the defendant] has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced . . . . Vague, conclusory, or speculative claims will not suffice."); Greiner, 417 F.3d at

7

321 (quoting Strickland, 466 U.S. at 691) ("[W]hen there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Here, Inniss's trial counsel developed evidence and presented arguments in closing that the BIDC independently decided to award the contract to ICBL based on its merit as an insurance company. See, e.g., T. 198 (asking Alleyne about the importance of ICBL meeting with members of the Barbadian government); 313 (questioning Special Agent Krug about BIDC selecting a non-A-rate insurance company); 314 (asking Special Agent Krug about BIDC board vetting process and decisions); T. 463:19 (arguing "ICBL ended up with a better share" because the BIDC board "followed the procedure" and selected ICBL on that basis alone); T. 464: 7-11; 458:10-11 ("But look at the company that's A-1 and is able to handle a hundred percent coverage: It's ICBL."). It was reasonable for Inniss's trial counsel to decide against making even more arguments about the BIDC's procedures for awarding contracts. After all, the government needed only to prove—and did prove—that Inniss solicited or received the bribe as an inducement to, reward for or otherwise on account of doing or forbearing to do anything related to awarding the contracts to ICBL. See Barbados Prevention of Corruption Act, Section 3(1); T. 522:25-533:10. As the Court noted in its denial of the defendant's Rule 29 motion, the government did not even need to introduce evidence that Inniss "actually performed the act or refrained from performing an act" under the Prevention of Corruption Act of Barbados. Dkt. No. 115 at 10; see also T. 535:5-7. In other words, even if Inniss had misrepresented to Ingrid Innes (the CEO of ICBL) that he would cause the BIDC to issue contracts to ICBL—and solicited or received a bribe on a false premise—he still would have violated the Prevention of Corruption Act of Barbados. Nonetheless, the evidence at trial established that Inniss in fact took actions to secure the contract for ICBL. As the Court noted in its Rule 29 decision, the evidence at trial showed that "Mr. Inniss gave 'instructions to proceed' with the ICBL contract, which allocated to ICBL a 20% greater share of the BIDC business than it had in 2014." Dkt. No. 115 at 10.

Thus, Inniss's claim that he received ineffective assistance of counsel on this basis is meritless. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."); United States v. Kirsh, 54 F F3d 1062, 1071 (2d Cir. 1995) (noting that an attorney's "failure to make a meritless argument does not amount to ineffective assistance"); Hall v. Phillips, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) ("The law in this circuit is clear that when the underlying claims themselves are found to be meritless, the ineffective assistance claim is meritless as well.").

    b. <u>Alleged Failure to Present Evidence that Contract was Awarded via Public Tender</u>

Inniss similarly argues that his trial counsel failed to "present evidence that the contract was awarded via public tender, management recommendations and decisions of Board of Directors." Dkt. No. 154 at 4. In the First Supplement, Inniss describes evidence that he claims supports this defense theory, and he alleges it was not presented to the jury. Dkt. No. 164 at 4.

As noted above, however, Inniss's counsel did present evidence about the BIDC's process for awarding contracts and the board's decision to award two contracts to ICBL. Indeed, his trial counsel cross-examined witnesses at length about the circumstances of the BIDC

awarding the contracts to ICBL. See, e.g., T. 198 (asking Alleyne about the importance of ICBL meeting with members of the Barbadian government); 313 (questioning Special Agent Krug about BIDC selecting a non-A-rate insurance company); 314 (asking Special Agent Krug about BIDC board vetting process and decisions). Defense counsel also argued in summation that BIDC had a "vetting process" to select the best insurer, T. 463:19, and that "ICBL ended up with a better share" because the BIDC board "followed the procedure" and selected ICBL on that basis alone. T. 464: 7-11; 458:10-11 ("But look at the company that's A-1 and is able to handle a hundred percent coverage: It's ICBL."). Thus, Inniss's trial counsel did present evidence that ICBL received the contracts because it was the most qualified insurer and not because Inniss had unduly influenced the award. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (counsel has no duty to "advance every nonfrivolous argument that could be made").

### c. Alleged Failure to Investigate Witnesses

Inniss also claims that his trial counsel failed to investigate and interview a list of potential, unnamed witnesses. Dkt. No. 154 at 5. Inniss further claims that the list provided included the "titles and roles and likely testimony evidencing that Inniss was not involved in the selection of insurers nor did the petitioner witness these decisions." Id. Inniss also claims that the witnesses included the "Chairman and Deputy Chairman of the BIDC as well as individuals who are very experienced in matters related to politicians and corporate donors in Barbados." Dkt. No. 164 at 6.

"To succeed on a claim of ineffective assistance of counsel or failure to investigate . . . [Inniss] has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." See Vrancea, No. 12-cr-198, 17-cv-5235, 2019 WL 6726829, at *6 (E.D.N.Y. Dec. 11, 2019). "Vague, conclusory, or speculative claims will not suffice." Id. Inniss has failed to meet his burden. Here, Inniss makes broad, vague claims about witnesses who could have assisted in his defense, yet he does not identify them by name or describe in any detail the nature of their testimony. See, e.g., Abakporo v. United States, No. 18-CV-00842, 2023 WL 8126349, at *15 (S.D.N.Y. Jan. 24, 2023) ("Petitioner does not provide any objective basis (such as affidavits from the requested witnesses) to support his assertion that these witnesses would have given exculpatory testimony."); United States v. Chavez, 764 F.Supp. 2d 638, 64 ("Chavez has provided no evidence showing that [counsel's] decision not to investigate [a witness] was anything but tactical"); United States. v. Figueroa, No. 04-CR-6106, 2010 WL 2710514, at *2 (W.D.N.Y. July 7, 2010) (§ 2255 claim dismissed because petitioner failed to establish how any uninvestigated matters or witnesses "would have been helpful and beneficial to him"). Accordingly, Inniss's challenge to his conviction on this basis should be rejected.

### d. Alleged Failure to Present Evidence that the Bribe Payments were Supposedly Legal Political Contributions

Finally, Inniss claims that his trial counsel failed to present evidence that the bribe payments were political contributions and that the method by which he received the money was typical in Barbados. Dtk. No. 154 at 7. This argument too is meritless. Trial counsel did in fact attempt to present evidence that the payment to Inniss was a typical political contribution. For example, during cross-examination of Kamante Millar, Inniss's trial counsel asked whether Alex Tasker "told you that payments were as political payments, commissions and contributions for bringing in business." T. 107:10-11; see also T. 197:4-6 (Goulbourne Alleyne testifying on

9

cross-examination that it was not unusual for ICBL officers to promote the company's brand to government officials); 202:11-14 (Alleyne testifying on cross-examination about ICBL's donation budget for community projects). Moreover, during summations, trial counsel argued to the jury that the government had the burden to prove that the payment was "not a political contribution" or "a donation"; that there was "something going on with this money which often happens in politics;" and that it was not "unusual for officers of ICBL to meet with the ministers and explain to them the product[.]" T. 452:21-22; 468:21-22; 469:20-22. Thus, trial counsel did exactly what Inniss wanted him to do. But even assuming Inniss's trial counsel did not present such evidence, it would not constitute ineffective assistance of counsel. It is well-settled that decisions about how and what kind of defense counsel should put on is "a question of trial strategy which courts will practically never second guess." See Carvajal v. Artus, 07-CV-10634 (CM), 2008 WL 4555531, at *37 (S.D.N.Y. Oct. 10, 2008) (decision whether to call a particular witness is question of trial strategy); DiMattina v. United States, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013) ("It is reasonable to infer that experienced trial counsel chose to allocate resources to pursue more promising defenses rather than one with a low probability of success.").

e. Other Issues Raised in the First and Second Supplements

Inniss raises in the First Supplement additional claims that are equally meritless. First, he complains about his trial counsel's cross-examinations of Alleyne and Millar. Dkt. No. 164 at 7. However, Inniss's trial counsel competently cross-examined these witnesses at length. For example, he questioned Millar about her direct testimony, including whether Tasker said payments to Inniss were "political payments," T. 107:9-21, and the impact of her non-prosecution agreement, T. 104:8-23. The scope of trial counsel's cross-examinations were tactical decisions that do not support an ineffective assistance claim. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987) ("'Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and will not support an ineffective assistance claim")).

Second, Inniss complains that the government did not provide any information regarding the findings of an investigation by the Financial Intelligence Unit in Barbados, and that "defense counsel did not raise any concerns or queries on this with the Court." Dkt. No. 164 at 7. However, the Court specifically precluded the admission of such evidence in its pretrial rulings. See Dkt. No. 86 at 20 (granting government's motion in limine to preclude Inniss from introducing evidence concerning the activities of Barbadian law enforcement against Inniss). Trial counsel cannot be ineffective for failing to introduce inadmissible evidence. See Barnes v. Burge, 372 F. App'x 196, 201 (2d Cir. 2010) (holding that counsel was not ineffective where counsel did not pursue testimony that would have been inadmissible hearsay).

Third, Inniss complains that his trial counsel did not present evidence that Inniss was not facing financial hardships when he received the bribe payments. Dkt. No. 164 at 7-8. It was, however, reasonable for Inniss's trial counsel not to make an issue out of Inniss's finances. The government did not argue Inniss solicited the bribe payments because he was desperate for money or otherwise put his finances at issue. Thus, Inniss' trial counsel made reasonable a tactical decision not to present evidence or argument about Inniss's finances. See Gonzalez, 553 U.S.at 249 ("Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible

under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial."); Barnes, 372 F. App'x at 201; Luciano, 158 F.3d at 660.

In his Second Supplement, Inniss also argues that trial counsel was "constructively absent" from trial preparation and trial proceedings and his conviction should therefore be overturned pursuant to United States v. Cronic, 466 U.S. 648 (1984). This is false. Trial counsel is an experienced trial lawyer who entered an appearance more than a year before trial in this case. As is clear from the extensive pre-trial motions practice and the trial record, as discussed above, Inniss's trial counsel actively and competently defended Inniss.

### C. **The Defendant Was Not Prejudiced by Defense Counsel's Performance**

Even assuming defense counsel's alleged deficiencies were somehow objectively unreasonable, whether taken separately or in their totality, they simply did not cause any prejudice to Inniss. To establish prejudice, a defendant must demonstrate not just "some conceivable effect," Strickland, 466 U.S. at 693, but "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (citing Strickland, 466 U.S. at 694); see also Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.), cert. denied, 493 U.S. 898 (1989) (holding that defendant failed to establish prejudice for failure to investigate claim where defendant produced no affidavit from the witness in question or any other independent support for his claim because he offered only speculation that he was prejudiced, which was not enough to undermine confidence in the outcome of the trial). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In deciding an ineffective assistance of counsel claim, a court need not address both prongs of the Strickland inquiry if Inniss makes an insufficient showing on either one. See Strickland, 466 U.S. at 697; see also Barry v. United States, No. 14-CV-5898 (RJD), 2015 WL 3795866, at *2 (E.D.N.Y. June 17, 2015) ("Lack of prejudice, in turn, entirely disposes of the . . . ineffectiveness claims without the need to reach the question of deficient performance."). In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by Inniss as a result of the alleged deficiencies." Strickland, 466 U.S. at 697; see also Carneglia v. United States, No. 03-CV-6388 (ADS), 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006). Notably, if a defendant fails to show prejudice, there is "no need to consider the objective reasonableness of counsel's actions." United States v. Birkin, 366 F.3d 95, 101 (2d Cir. 2004); see also Strickland, 466 U.S. at 697 ("[T]here is no reason for a court . . . to address both components of the inquiry . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Here, as the Court held in rejecting Inniss's Rule 29 motion, the government's proof against Inniss was substantial and his arguments in the Petition do not call his conviction into question. There was overwhelming evidence at trial that Inniss intended to promote the bribery scheme and in fact took steps to influence the BIDC decision-makers to secure the 2015 and 2016 contracts for ICBL in exchange for the bribe. See, e.g., Dkt. No. 115 at 6 ("Ms. Innes told Ms. Millar that ICBL needed to make an urgent payment in USD to Mr. Inniss for a 'referral bonus'"); at 9 (". . . payment amounts were evidence that the payments to Mr. Inniss were a reward for ICBL's securing two contracts"); at 10 (evidence established that "Mr. Inniss gave 'instructions to proceed' with the ICBL contract"). Accordingly, the Court found that the

government introduced "substantial evidence" that the bribe payments were made to secure ICBL's contracts with BIDC. Id. at 5.

The trial evidence also proved, beyond a reasonable doubt, that the purpose of the payments was to bribe Inniss to secure the contracts for ICBL. See, e.g., id. at 6 (Ms. Millar further testified that she created a fake invoice that Ms. Innes described as a "referral bonus"); at 7 ("CDL did not provide consultancy services or any services for ICBL in 2015 or 2016); at 9 ("[T]he court finds that there was more than sufficient evidence for the jury to find that the 2015 and 2016 payments by ICBL to Mr. Inniss were directly linked to the BIDC contracts"); at 9 (Court stating that "payment amounts were evidence that the payments to Mr. Inniss were a reward for ICBL's securing two contracts with the BIDC."). Thus, Inniss has failed to demonstrate that he suffered prejudice under Strickland.

### D. **The Court Should Not Hold a Hearing**

The Court should deny Inniss's request for a hearing. To warrant a hearing on his petition, Inniss must establish a "plausible" claim of ineffective assistance of counsel. Pugilisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Id. (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255). Based on Inniss's motion, he has failed to establish a plausible claim of ineffective assistance of counsel, and it should be dismissed without a hearing.

IV. **Conclusion**

For the foregoing reasons, the government respectfully requests that Inniss's motion be denied.

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

__/s/_____
Genny Ngai
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6393
Email: genny.ngai@usdoj.gov

__/s/_____
Peter L. Cooch
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 924-6259
Email: peter.cooch@usdoj.gov

cc: Donville Inniss
124 Husband Heights
St. James, Barbados